UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEAMSTERS LOCAL 639–EMPLOYERS )
HEALTH TRUST AND ITS TRUSTEES, )
THOMAS RATLIFF, JOHN GIBSON, )
PHILIP GILES, ERIC D. WEISS, )
RAY HOWARD, FRANK W. STEGMAN AND )
MICHAEL R. BULL, )
)
3130 Ames Place, N.E. )
Washington, D.C.  20018, )
)
and )
)
TEAMSTERS LOCAL 639--EMPLOYERS )
PENSION TRUST AND ITS TRUSTEES, )
THOMAS RATLIFF, JOHN GIBSON, )
PHILIP GILES, ERIC D. WEISS, )
RAY HOWARD, AND FRANK W. STEGMAN, )
)
3130 Ames Place, N.E. )
Washington, D.C. 20018, )
)
     Plaintiffs, )
)
v. )    C. A. No.
)
**Boiler and Furnace Cleaners Inc.,** )
)
4631 Baltimore Ave. )
Hyattsville, MD 20781 )
)
     Defendant. )
)

## COMPLAINT

## Introduction, Jurisdiction and Venue

1.     This is a civil action brought by the trustees of two employee benefit plans pursuant to Section 502(a)(3), (d)(1) and (g)(2) and Section 515, of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Sections 1001, et seq., to collect delinquent and unpaid contributions, interest on the delinquent and unpaid contributions, liquidated damages owed to the employee benefit plans as a result of the contributing employer's violation of the collective bargaining agreement and applicable trust agreements, reasonable attorneys fees, and other legal or equitable relief deemed appropriate by the Court.

2.     Jurisdiction is conferred upon this court by Section 502(e) and (f) of ERISA, 29 U.S.C. § 1132(e) and (f), and Section 301 of the Labor Management Relations Act of 1974, as amended, 29 U.S.C. § 185.  Jurisdiction also lies under 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

3.     Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because the Plaintiff ERISA plans are administered and can be found in Washington, D.C.

## Parties

4.     Plaintiff Teamsters Local 639–Employers Health Trust ("Health Trust") is an employee welfare benefit plan within the meaning of Section 3(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained pursuant to collective bargaining agreements between the Drivers, Chauffeurs and Helpers Local Union No. 639, affiliated with the International Brotherhood of Teamsters ("Local 639") and various employers, including, Boiler and Furnace Cleaners, Inc. ("Defendant") for the purpose of providing health and other

2

welfare benefits to eligible employees and their eligible dependents covered under the collective

bargaining agreements. A true, correct and complete copy of the Health Trust Agreement and

Declaration of Trust is attached as Exhibit A to this Complaint.

5.      Plaintiff Teamsters Local 639–Employers Pension Trust ("Pension Trust") is an

employee pension plan within the meaning of Section 3(2) and (3) of ERISA, 29 U.S.C.

§1002(2) and (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA,

29 U.S.C. § 1002(37)(A), established and maintained pursuant to collective bargaining

agreements between Local 639 and various employers, including Defendant, for the purpose of

providing pension benefits to eligible employees and their eligible dependents covered under the

collective bargaining agreements. A true, correct and complete copy of the Pension Trust

Agreement and Declaration of Trust is attached as Exhibit B to this Complaint.

6.      The Health and Pension Trusts are each governed by a Board of Trustees, half of

whom are appointed by the contributing employers, and half by Local 639. The Health and

Pension Trusts are administered at 3130 Ames Place, N.E., Washington, D.C. 20018. The Board

of Trustees is the sponsor and administrator of the Health and Pension Trusts, within the

meaning of Section 3(16)(A) and (B) of ERISA, 29 U.S.C. § 1002(16)(A) and (B).

7.      Plaintiffs Thomas Ratliff, John Gibson, Philip Giles, Eric D. Weiss, Ray Howard,

Frank W. Stegman, and Michael R. Bull are trustees of the Health Trust and are fiduciaries

within the meaning of Sections 3(21)(A) and 502(a)(3), (e)(1) and (g)(2) of ERISA, 29 U.S.C. §§

1002(21)(A) and 1132(a)(3), (e)(1) and (g)(2). They bring this action on behalf of the Health

Trust and the participants and beneficiaries of the Health Trust pursuant to Sections 502 and 515

3

of ERISA, 29 U.S.C. §§ 1132, 1145.

8. Plaintiffs Thomas Ratliff, John Gibson, Philip Giles, Eric D. Weiss, Ray Howard, and Frank W. Stegman are trustees of the Pension Trust and are fiduciaries within the meaning of Sections 3(21)(A) and 502(a)(3), (e)(1) and (g)(2) of ERISA, 29 U.S.C. §§ 1002(21)(A) and 1132(a)(3), (e)(1) and (g)(2). They bring this action on behalf of the Pension Trust and the participants and beneficiaries of the Pension Trust pursuant to Section 502 and 515 of ERISA, 29 U.S.C. § 1132, 1145.

9. Defendant Boiler and Furnace Cleaners, Inc. is a corporation in good standing registered in the State of Maryland. Defendant's corporate address as registered with the State of Maryland is 4631 Baltimore Ave., Hyattsville, Maryland 20781.

10. Defendant provides boiler, furnace and incinerator repair, maintenance and installation service throughout the Washington D.C. metropolitan area. Upon Information and belief, it maintains its offices and primary place of business at 4631 Baltimore Ave., Hyattsville, MD 20781.

11. Defendant, at all relevant times, employed workers who were and are represented by Local 639, and who are participants in the Health and Pension Trusts. At all times material to this Complaint, Defendant was an "employer" in an "industry affecting commerce" as defined by Section 3(5), (9), (11), (12) and (14) of ERISA, 29 U.S.C. § 1002(5), (9), (11), (12) and (14), and an "employer whose activities affect commerce" within the meaning of Section 301(b) of the LMRA, 29 U.S.C. § 185(b).

4

<u>Defendant's Obligations Under the Collective Bargaining Agreement</u>
<u>and the Health and Pension Trusts</u>

12.     On or about October 16, 2004, Defendant and Local 639 entered into a collective

bargaining agreement, as that term is used throughout ERISA, establishing terms and conditions

of employment for individuals employed by Defendant and represented by Local 639, effective

for the period of October 16, 2004 through October 15, 2007 (the "2004 Agreement"). A true,

correct and complete copy of the 2004 Agreement is attached as Exhibit C to this Complaint.

13.     On or about October 16, 2001, Defendant and Local 639 entered into a collective

bargaining agreement, as that term is used throughout ERISA, establishing terms and conditions

of employment for individuals employed by Defendant and represented by Local 639, effective

for the period of October 16, 2001 through October 15, 2004 (the "2001 Agreement"). A true,

correct and complete copy of the 2001 Agreement is attached as Exhibit D to this Complaint.

1.     Pursuant to Article XXVII of the 2001 Agreement, effective October 16, 2001,

Defendant was required to make contributions to the Health Trust in the amount of $3.02 per

hour or portion thereof for each employee that had performed work. Effective October 16, 2003,

Defendant was required to make contributions to the Health Trust in the amount of $3.17 per

hour or portion thereof for each employee that had performed work.  Pursuant to Article XXVII

of the 2004 Agreement, effective October 16, 2005,  Defendant is required to make contributions

to the Health Trust in the amount of $3.52 per hour or portion thereof for each employee that has

performed work. Effective October 16, 2006, the parties were to implement a new and yet

undetermined contribution rate to the Health Trust.  The parties to date have not negotiated a new

5

contribution rate, and therefore, the existing rate of $3.52 remains in effect.

15.      Pursuant to Article XXVIII of the 2001 Agreement, effective October 16, 2001,

Defendant was required to make contributions to the Pension Trust in the amount of $1.50 per

hour or portion thereof for each employee that performed work. Effective October 16, 2002,

Defendant was required to make contributions to the Pension Trust in the amount of $1.95 per

hour or portion thereof for each employee that performed work. Effective October 16, 2003,

Defendant was required to make contributions to the Pension Trust in the amount of $2.41 per

hour or portion thereof for each employee that performed work. Pursuant to Article XXVIII of

the 2004 Agreement, effective October 16, 2006, Defendant was required to make contributions

to the Pension Trust in the amount of $3.46 per hour or portion thereof for each employee that

has performed work.

16.      Pursuant to Articles XXVII and XXVIII of the collective bargaining agreement,

Defendant is bound by the Trust Agreements and Declaration of Trusts governing the

administration of the Health and Pension Trusts.

17.      Pursuant to Article VI of the Trust Agreements governing each of the Health and

Pension Trusts, Defendant is required to make its monthly contributions to the Trusts according

to the payment rules set by the Trustees.

18.      In accordance with Article VI of the Trust Agreements, Defendant is required to

make all contributions to the Trusts on or before the last day of the month following the month in

which the employee worked.  See Exhibits A and B Article VI, Section 6.4.  If Defendant's

contributions are paid late, under the rules promulgated by the Trustees of the Health and

6

Pension Trusts, interest is assessed at the prime rate or at a monthly rate of 1.5%, whichever is greater. See Exhibits A and B Article VI, Section 6.5.

19.    The Health and Pension Trusts also provide that liquidated damages will be imposed on delinquent and/or late contributions in the amount of 10% of the delinquency. See Exhibits A and B Article VI, Section 6.5.

20.    Furthermore, the Health and Pension Trusts obligate delinquent employers to pay the Health and Pension Trusts' costs and expenses of collection, including audit fees, attorney fees and court costs. See Exhibits A and B Article VI, Section 6.5.

### The Delinquencies

21.    The Defendant failed to remit contributions and/or timely remit contributions owed to the Health and Pension Trusts during a period beginning in November 2003 and ending in June 2005. As a result of the Defendant's failure to remit contributions and/or timely remit contributions from November 2003 to June 2005, Defendant, as of April 26, 2007, owes to the Health and Pension Trusts $6,261.86 in interest on late payments and liquidated damages.

22.    As a result of a 1999 settlement agreement between the Trust Funds and the Defendant, a credit of $2,762.61 was applied to Defendant's amount owed to the Health Fund and a credit of $1,016.86 was applied to Defendant's amount owed to the Pension Fund.

23.    In response to Defendant's failure to timely remit contributions, the Pension and Health Trusts sent notices to Defendant on or about May 10, 2005, June 9, 2005, July 12, 2005, August 12, 2005, September 19, 2005 and October 7, 2005. True, correct and complete copies of

7

these notices are attached collectively as Exhibit E to this Complaint.

24.    In response to Defendant's failure to timely remit contributions, the Pension and Health Trusts, by and through their attorneys, sent a letter dated February 14, 2006, to Defendant demanding payment of the contributions owed pursuant to the collective bargaining agreement and the Trust Agreements. A true, correct and complete copy of the letter is attached as Exhibit F to this Complaint. In response to the letter, Defendant, by telephone, requested an email summarizing the amounts owed to the Pension and Health Funds.

25.    In response to Defendant's request, the Pension and Health Trusts, by and through their attorneys, sent an email dated April 12, 2006, to Defendant detailing the amounts owed and demanding payment. A true, correct and complete copy of the email is attached as Exhibit G to this Complaint.

26.    Counsel for the Pension and Health Trusts again demanded payment on July 20, 2006, August 16, 2006 and November 6, 2006. No response was ever received. True, correct and complete copies of the demands are attached as Exhibit H to this Complaint.

27.    On or about January 31, 2005, the Pension and Health Trusts, by and through the accounting firm of Regardie, Brooks & Lewis performed a payroll audit of Defendant. The payroll audit included, but was not limited to, analysis of pertinent provisions of the collective bargaining agreement and comparison of underlying payroll records of the Defendant to contribution reports received by the Trust Fund.

28.    The payroll audit revealed under payments to the Health and Pension Trusts for the work periods January 1, 2003 to December 31, 2005. As a result of the under payments,

8

Defendant owes the Health and Pension Trusts $10,110.37 in under payments which includes liquidated damages of $919.13. Defendant also owes the Health and Pension Trusts interest as a result of the under payments.

29.     In response to Defendant's under payments, the Pension and Health Trusts sent notices to Defendant on or about October 16, 2006 and November 21, 2006 demanding payment. True, correct and complete copies of these notices are attached collectively as Exhibit I to this Complaint.

30.     Defendant failed to timely remit contributions and underpaid contributions owed pursuant to the collective bargaining agreement and pursuant to the Trust Agreements. Defendant's failure to timely remit contributions pursuant to the results of the audit makes Defendant liable for liquidated damages and interest on all late payment amounts and on all unpaid amounts pursuant to the applicable Trust Agreements and Section 502(g) of ERISA.

31.     Despite the collection efforts of the Fund Office and counsel, Defendant remains delinquent, and there is little prospect that, lacking judicial compulsion, Defendant will satisfy its remaining obligations to the Plaintiff Trusts, and pay the delinquent and unpaid contributions, liquidated damages and interest due on the delinquent and unpaid contributions.

32.     Defendant's actions are in violation of the collective bargaining agreement, and the Health and Pension Trusts governing documents.

33.     Defendant's actions have caused, and continue to cause, great harm to the Trusts in a variety of ways, including, but not limited to, the following: they have caused the Trusts to incur collection and other expenses associated with pursuing this delinquency and unpaid

contributions; they have caused a loss of the time value of the delinquent and unpaid contributions to the Trusts; and they have resulted in a discrediting of the Trusts' ability to enforce obligations owed to it, which may result in other employers utilizing the same tactics.

<u>Relief</u>

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.    Declare that Defendant is delinquent in remitting its contributions to the Pension and Health Trusts pursuant to the 2001 Agreement and the 2004 Agreement;

2.    Award as damages, all contributions owed to the Health and Pension Trusts;

3.    Award as damages, interest on all delinquent and unpaid contributions owed to the Health and Pension Trusts, as mandated by the Health and Pension Trust Agreements and Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

4.    Award liquidated damages on all delinquent and unpaid contributions owed, as mandated by Article VI of the Health and Pension Trust Agreements and Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

5.    Require Defendant to reimburse Plaintiffs for all costs incurred in bringing this action, including reasonable attorney fees, pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D);

6.    Enter a permanent injunction requiring Defendant to timely pay all contributions to the Pension and Health Trusts as they become due and owing;

7.    Award such other relief as the Court deems just and proper.

Respectfully submitted,

Mark J. Murphy, Esq.
D.C. Bar No. 453060
Elizabeth A. Saindon, Esq.
D.C. Bar No. 440420
Michael L. Artz, Esq.
D.C. Bar No. 468025
Mooney, Green, Baker & Saindon, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088

Counsel for Plaintiffs

May 22, 2007

# EXHIBIT A

# TEAMSTERS LOCAL 639-EMPLOYERS HEALTH TRUST FUND
## Agreement and Declaration of Trust

### AMENDED AS OF JANUARY 18, 1984

THIS AGREEMENT is made and entered into at Washington, D.C. this _____ day of _____, 19___ by and between _____

hereinafter called the "COMPANY", and the DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 639 of Washington, D.C., hereinafter called the "UNION"; and JACK BAKER, MORRIS DAVIDSON, WILLIAM McINTYRE, and ROGER OLSON, Company Trustees; and JOHN CATLETT, JOSEPH CONNORS, PHILIP FEASTER, and JOHN STEGER, Union Trustees, hereinafter called "TRUSTEES"

*Recitals:*

1. The Company and other Employers signatory to this Trust Agreement, are parties to collective bargaining agreements with the Union which provide that each Employer covered by any of said collective bargaining agreements will pay the sum specified therein, in the manner specified therein, for Employees under such collective bargaining agreements to a Health Fund established for the benefit of such Employees and their Dependents.

2. The parties have agreed that such payments shall be payable to and be deposited in the Trust Fund referred to in this Trust Agreement.

3. The purpose of this Trust Agreement is to provide for the revision and maintenance of such Trust Fund originally established by agreement of January 20, 1952 and as modified or amended subsequently, and for the revision and maintenance of such Health Plan authorized by the collective bargaining agreements.

4. The purpose of the Health Plan is to provide medical and related benefits for eligible Employees covered by the aforesaid collective bargaining agreements and eligible under the Plan, and such other persons as the Trustees may include from time to time, either through the purchase of insurance policies or the payment of said benefits directly from the Fund.

*Provisions*

In consideration of the foregoing, and of the mutual promises hereinafter provided, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

Unless the context or subject matter requires otherwise, the following definitions shall govern this Agreement and Declaration of Trust:

*Section 1.1 Collective Bargaining Agreement.* The term "Collective Bargaining Agreement" as used herein, shall mean the Collective Bargaining Agreements in force and effect between the Union and the Company, together with any modifications, supplements or amendments thereto.

*Section 1.2 Union.* The term "Union" as used herein shall mean Drivers, Chauffeurs and Helpers Local Union No. 639 of Washington, D.C., affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and any Union affiliated with Teamsters' Joint Council No. 55, Washington, D.C. that enters into an Agreement and Declaration of Trust with the Trustees.

*Section 1.3 Company.* The term "Company" as used herein shall mean any corporation, partnership, or individual that has a collective bargaining agreement with the Union, or has signed a participation agreement with the Trust providing for payments into the Trust Fund on behalf of any Employee of such Employer covered by such Agreement. "Companies" means more than one such Company.

*Section 1.4 Employer.* The term "Employer" as used herein shall mean Company as defined immediately above, and further, shall mean the Union in its capacity as an Employer, except that the Union shall not participate in the selection of Employer Trustees.

*Section 1.5 Employees.* The term "Employees" as used herein, shall mean (1) those persons employed by any Employer as defined in Section 1.4 and on whose behalf payments are required to be made to the Health Fund pursuant to a Collective Bargaining Agreement or a signed participation agreement; (2) paid Employees of the Union providing the Union contributes to the Health Fund on behalf of each such Employee.

*Section 1.6 Participant.* The term "Participant" as used herein, shall mean any Employee of a Company or Union who is reported and for whom contributions are made to the Health Trust Fund.

*Section 1.7 Beneficiary.* The term "Beneficiary" as used herein, shall mean a person designated by the terms of the Health Plan created pursuant to this Agreement and Declaration of Trust, who is or may become entitled to a benefit from this Fund.

*Section 1.8 Trustees.* The term "Trustees" as used herein, shall mean the Trustees designated in this Trust Agreement, together with their successors designated and appointed in accordance with the terms of this Trust Agreement.

*Section 1.9 Insurer.* The term "Insurer" as used herein, shall mean any insurance company qualified to do business in the District of Columbia selected to underwrite the Health Plan by the Trustees.

*Section 1.10 Agreement and Declaration of Trust.* The term "Agreement and Declaration of Trust" as used herein, shall an this instrument including any amendments, supplements and modifications hereto.

*Section 1.11 Act.* The term "Act" as used herein, shall mean the Employee Retirement Income Security Act of 1974, and amendments as may from time to time be made and any regulations promulgated pursuant to the provisions of the Act.

*Section 1.12 Plan of Health Benefits.* The term "Health Plan" as used herein, shall mean the program of medical and related benefits established by the Board of Trustees pursuant to this Agreement and Declaration of Trust.

*Section 1.13 Health Trust Fund.* The term "Health Trust Fund" or "Fund" or "Health Fund" as used herein, shall mean the Trust Fund provided for in the Collective Bargaining Agreement between the Company and the Union which is continued by this restated Agreement and Declaration of Trust, and shall mean generally the monies, insurance policies and other things of value which comprise the corpus, income and additions to the Trust Fund.

# ARTICLE II
## CONTINUATION OF THE HEALTH FUND

*Section 2.1 Continuation of the Health Trust Fund.* There is hereby continued a Trust Fund known as the "Teamsters Local 639-Employers Health Trust".

*Section 2.2 Composition of Health Trust Fund.* This Trust Fund consists of (1) such sums of money as have been or shall be paid to the Health Fund by the Employers as contributions required by Collective Bargaining Agreements or signed participation agreements; (2) all investments made therewith, the proceeds thereof and the income therefrom; (3) all other contributions and payments to the Trustees from any source whatsoever to the extent permitted by law; (4) all policies of insurance including dividends, interest, refunds or other sums payable to the Trustees on account of said policies; and (5) supplies, property and other assets used by the Trustees in the administration of the Health Fund.

*Section 2.3 Purpose of Trust Fund.* The Trust Fund continued hereby is for the purpose of providing (1) medical benefits and such other benefits as may be permitted by law under a plan of benefits adopted by the Trustees and (2) the means for financing the expenses of the Trustees in the operation and administration of the Health Trust Fund, in accordance with this Agreement and Declaration of Trust. It is intended that this Trust be a multi-employer plan as that term is defined in Section 3(37) of the Act.

*Section 2.4 Irrevocable Purpose.* The Trust continued hereby shall constitute an irrevocable trust established for the exclusive benefit of employees, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, as amended by Public Law 86-257, 1959, and in accordance with the Act.

# ARTICLE III
## BOARD OF TRUSTEES

*Section 3.1 Board of Trustees.*

(a) The operation and administration of the Health Trust Fund shall be the responsibility of a Board of Trustees, composed of eight (8) Trustees, four (4) of whom shall be appointed by contributing Employers as defined in Article I, Section 1.4, and four (4) of Whom shall be appointed by the union.

(b) The Union Executive Board shall designate and appoint four Trustees of the Union in accordance with the Union's By-Laws. The Union Trustees' term shall be concurrent with the term of office of a majority of the Union Executive Board that initially appoints the Union Trustee. The President of the Union shall set forth the names of the Trustees so appointed by instrument in writing addressed to the Board of Trustees.

(c) The contributing Employers shall appoint Trustees pursuant to regulations adopted from time to time by the Trustees previously appointed by the contributing Employers. To be eligible to participate in the election of Trustees a Company must:

(1) be a non-delinquent Employer, and

(2) not have been delinquent more than two times in the twenty-four (24) months preceding the election date.

*Section 3.2 Acceptance of Trusteeship.* A Trustee shall execute a written acceptance in a form satisfactory to the Trustees and consistent with the Act and thereby shall be deemed to have accepted the Trust created and established by this Trust Agreement and to have consented to act as Trustee and to have agreed to administer the Health Trust Fund as provided herein. Such written acceptance shall be filed at the office of the Fund.

*Section 3.3 Name.* The Trustees shall conduct the business of the Health Trust Fund and execute all documents and instruments in the name of the Teamsters Local 639-Employers Health Trust Fund.

*Section 3.4 Resignation and Replacement of Trustees.* A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving (30) days' notice in writing to the remaining Trustees and to the party by whom he was designated, or such shorter notice as the remaining Trustees may accept as sufficient. The notice shall state the date on which such resignation shall take effect; and such resignation shall take effect on the date specified in the notice, unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

In the event of the resignation, death, incapacity or the unwillingness of any of the Trustees to serve, a successor Trustee shall be designated by the Union Executive Board to replace a Union Trustee, or by the remaining Company Trustees to replace a Company Trustee. The remaining Trustees shall be notified of such designation by an instrument in writing.

Any successor Trustee designated as herein provided shall affix his signature to a certificate of acceptance of this Agreement and Declaration of Trust as provided in Section 2 of this Article, and shall, without further act, become vested with all the estate rights, powers, discretions and duties of his predecessor Trustee.

Any retiring Trustee shall forthwith turn over to the remaining Trustees at the office of the Health Fund any and all records, books, documents, monies and other property in his possession which are a part of the Health Trust Fund and incident to the fulfillment of the Trustees' duties and responsibilities under this Agreement and Declaration of Trust.

The powers of the Trustees to act, as above provided in this Trust Agreement, shall not be impaired or limited in any way pending the designation of a successor Trustee to fill any vacancy.

*Section 3.5 Term of Trustees.* The full terms of all Trustees shall be four years commencing as of January 18, 1984 and thereafter on successive fourth anniversaries of such date, unless shortened in the case of a Union Trustee by application of Section 3.1(b) of this Article.

*Section 3.6 Payment of Trustees.* The Trustees shall not receive compensation for the performance of their duties as Trustees but may be reimbursed for all reasonable and necessary expenses which they incur in the performance of their duties. Any Trustee who is not otherwise employed by a contributing Company or the Union as defined herein shall be paid such reasonable compensation as shall from time to time be agreed upon by the Board of Trustees.

## ARTICLE IV
## MEETINGS AND DECISIONS OF THE TRUSTEES

*Section 4.1 Officers of the Trustees.* The Trustees shall select from among their number a Chairman, and a Secretary. When the Chairman has been selected from the Trustees appointed by the Union the Secretary shall be selected from the Trustees appointed by the Employers or vice versa.

*Section 4.2 Meetings of the Trustees.* Regular meetings of the Trustees shall be held at such times and places as may be agreed upon by the Board of Trustees. Reasonable notice of the meetings shall be provided, except that meetings may be held at any time without notice if all the Trustees consent thereto in writing. Special meetings may be called by the Chairman and Secretary or any four (4) Trustees upon five (5) days' written notice to the other four (4) Trustees. The Trustees shall meet at least once every three months and at such other times as they deem it necessary to transact their business.

*Section 4.3 Action of Trustees Without Meeting.* Action by the Trustees may also be taken by them in writing, without a meeting, or by telephone conference call, or by wire, provided that in such cases, there shall be unanimous concurrence of all Trustees.

*Section 4.4 Quorum.* In all meetings of the Trustees, four (4) Trustees shall constitute a quorum for the transaction of business, provided there are at least two (2) Trustees appointed by the Union, and at least two (2) Trustees appointed by Employers present at such meetings. At all meetings, each Trustee shall have one vote and the Employer and Union appointed Trustees collectively shall have equal voting strength.

*Section 4.5 Majority Vote of Trustees.* All action by Trustees shall be by majority decision of those voting. Such majority decision shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote or the lack of a quorum at two successive meetings, the matter shall be resolved pursuant to the procedure set forth in Article VIII hereof.

*Section 4.6 Minutes of Meetings.* The Trustees or their designee shall keep minutes of all meetings, but such minutes need not be verbatim. Copies of the minutes shall be sent to all the Trustees and to such other persons as the Trustees may direct. Minutes of a meeting shall be reviewed and approved by the Trustees at the next meeting.

## ARTICLE V
## POWERS AND DUTIES OF TRUSTEES

*Section 5.1 Conduct of Trust Business.* The Trustees shall have authority to control and manage the operation and administration of the Health Fund and shall conduct the business and activities of the Health Fund in accordance with this Trust Agreement and applicable law. The Trustees shall hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees shall be the Named Fiduciary and the Administrator of the Health Fund as those terms are defined in the Act.

*Section 5.2 Use of the Trust Fund for Expenses and to Provide Benefits.*

(a) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses (i) of collecting employer contributions and payments and other monies and property to which they may be entitled; (ii) of administering the affairs of this Trust, including the purchase or lease of real property, material, supplies and equipment; (iii) of obtaining such legal, actuarial, investment, administrative, accounting clerical and other assistance or employees as they may find necessary or appropriate; and (iv) of performing such other acts as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

(b) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of retirement and related benefits to eligible Employees and Beneficiaries in accordance with the terms, provisions and conditions of the Health Plan to be agreed upon by the Trustees pursuant to this Agreement and Declaration of Trust.

*Section 5.3 Construction and Determinations by Trustees.* Subject to the stated purposes of the Health Fund and the provisions of this Trust Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits including the self funding of benefits, and all other related matters. They shall have full power to construe the provisions of this Agreement and Declaration of Trust and the Health Plan, and the terms used therein and any rules and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon the Union, the Company, the Employers, Employees and their Beneficiaries.

*Section 5.4 General Powers.* The Trustees, are hereby empowered, in addition to such other powers as are set forth herein or conferred by law, to:

(a) demand, collect, receive and hold contributions and to take such steps as may be deemed necessary or desirable to collect contributions due the Trust Fund;

(b) compromise, settle, arbitrate and release claims or demands in favor of or against the Health Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable; commence or defend any legal, equitable or administrative proceedings brought in connection with the Health Trust Fund and represent the Health Trust Fund in all such proceedings;

(c) pay or provide for the payment of all reasonable and necessary expenses of collecting contributions and payments;

(d) enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and the administration of the Health Fund;

(e) enter into an investment contract or agreement with an insurance company or companies for the investment and reinvestment of assets of the Trust Fund;

(f) enter into a group annuity contract or contracts and any agreements supplemental thereto, with an insurance company or companies for the purpose of investing all or a portion of the Fund held by them in Trust. Any such contract may provide that

deposits thereunder be allocated to the insurance company's general account, or solely to one or more of its separate accounts maintained for the collective investment of the assets of qualified retirement plans, including but not limited to, a separate account, invested primarily in real property or any interest therein, or to the insurance company's general account and one or more of its separate accounts. The insurance company issuing such contract shall have the exclusive responsibility for the investment and management of any amounts held under such contract, and shall have all the powers with respect to the assets of the Fund held thereunder as the Trustees have with respect to the assets of the Fund held under this Agreement and Declaration of Trust:

(g) invest, reinvest and have invested and reinvested all funds of this Health Trust Fund, without distinction between principal and income, in any type of investment the Trustees deem prudent. The Trustees shall have the authority, in respect to any stocks, bonds or other property, held by them as Trustees, to exercise all such rights, powers and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right;

(h) register securities or other Health Trust Fund property in the name of the Health Trust Fund or of the Trustees, or in the names of one or more nominees of the Trustees and to hold instruments in bearer form;

(i) enter into and terminate agency or custody agreements with banks, savings and loan associations or trust companies chosen by them, under which said agreements the Trustees may turn over to said banks, savings and loan associations, or trust companies a portion or all of the funds held by them in this Trust for safekeeping, investment or reinvestment, on such terms as the Trustees deem advisable;

(j) co-mingle at their discretion, all or any portion of the assets of the Health Trust Fund, with assets of other qualified employee benefit plans for the purpose of investment in, or through, investment trusts for employee benefit plans. Said investment may, at the Trustees' discretion, be in the equity and/or fixed income funds of such investment trusts. To the extent of this Health Trust Fund's participation in any investment trust, that investment trust shall constitute a part of this Agreement and Declaration of Trust;

(k) sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Health Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith;

(l) pay or provide for the payment of all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Health Trust Fund or any money, property or securities forming a part thereof;

(m) retain such portion of the monies of the Health Trust Fund in cash balances as the Trustees may deem desirable; sole discretion, deem necessary or desirable to carry out the purposes of such Health Trust Fund;

(o) allocate fiduciary responsibilities among the Trustees, or Committees of the Trustees, delegate fiduciary duties to persons other than Trustees and delegate Trustees responsibilities to an investment manager as provided in this Agreement and Declaration of Trust and in accordance with the requirements of the Act;

(p) appoint an investment manager or managers, as that term is defined in the Act, and enter into an agreement with such investment manager, in accordance with the requirements of the Act, delegating to the investment manager the responsibility to control and manage, including the power to acquire and dispose of, such of the assets of the Health Trust Fund as the Trustees may specify;

(q) enter into an agreement or arrangement with other similar trust funds for the operation of a joint administrative office, which, shall administer the office or offices of the Health Trust Fund, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services furnished by the consulting actuary, prepare (in cooperation, where appropriate, with the consulting actuary and independent auditor) all reports and other documents to be prepared, filed or disseminated by or on behalf of the Health Trust Fund in accordance with law, assist in the collection of contributions required to be paid to the Health Trust Fund by Employers and perform such other duties and furnish such other services as may be assigned, delegated or directed or as may be contracted by or on behalf of the Trustees;

(r) employ a reputable and qualified investment consultant to assist the Trustees in exercising their investment powers and authority by reviewing the investment policy and types and kinds of investments made by the Trustees and/or the investment manager(s) and to contract for investment measurement services;

(s) engage one or more independent qualified public accountants, one or more enrolled actuaries and qualified legal counsel to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary;

(t) pay or provide for the payment from the Trust Fund of all costs incurred in employing such professionals, consultants, and managers as the Trustees deem necessary and in accordance with this Trust Agreement and applicable law;

(u) designate an agent for service of legal process for the Health Trust Fund;

(v) obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Health Trust Fund as such, as well as employees or agents of the Trustees and of the Health Trust Fund, while engaged in business and related activities for and on behalf of the Health Trust Fund (i) with respect to liability to others as a result of acts, errors or omissions of such Trustee or Trustees, employees or agents, respectively, and (ii) with respect to injuries received or property damage suffered by them. The cost of the premiums for such policies of insurance shall be paid out of the Health Trust Fund to the extent permitted by the Act;

(w) enter into reciprocal agreements (on such terms as the Trustees deem advisable) with trustees of other pension funds to permit employees covered hereby to receive health credits in this Fund when working outside the geographical jurisdiction and/or trade jurisdiction covered by Collective Bargaining Agreements, as defined herein, and to receive from other health funds contributions made on behalf of employees not normally covered under this Health Fund, to permit those employees to receive Health credits in their home funds;

(x) merge or integrate this Fund into or with another health fund or to accept the transfer of all or a portion of the assets of another health fund in accordance with the requirements of the Act;

(y) establish such rules and regulations necessary to effectuate the purposes of this Agreement and Declaration of Trust and not inconsistent with the terms hereof;

(z) do any and all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective and purpose of enabling the Employees to obtain medical and related benefits.

*Section 5.5 Personal Liability.* No Trustee shall be liable or responsible for his own acts or for any acts or defaults of any other fiduciary or party in interest or any other person except to the extent liability is imposed by the Act.

The Trustees, to the extent permitted by the Act, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

*Section 5.6 Reliance on Written Instruments and Professional Advice.* Any Trustee, to the extent permitted by the Act, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees or the Chairman and Secretary as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

The Trustees may, from time to time, consult with the Trust Fund's legal counsel, actuary and any other professionals, and to the extent permitted by the Act, the Trustees shall be protected in acting upon the advice of such professionals.

*Section 5.7 Reliance by Others.* No party dealing with the Trustees shall be obligated to see to the application of any funds or property of the Trust Fund to the stated Trust or to see that the terms of this Trust Agreement have been complied with or to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon that at the time of the execution of said instrument, the Trust was in full force and effect, that the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and that the Trustees were duly authorized and empowered to execute the instrument.

*Section 5.8 Books of Accounts.* The Trustees shall cause to be kept true and accurate books of accounts and records of all transactions of the Health Trust Fund which shall be open to the inspection of each of the Trustees at all times and which shall be audited at least annually and at such other times as the Trustees deem appropriate by a certified public accountant selected by the Trustees. A complete and detailed statement of the annual audit, including the benefits and administration costs, shall be made available to the Union and to each Company requesting a copy thereof.

*Section 5.9 Surety Bonds.* The Trustees and any employees who are empowered and authorized to sign checks and handle monies of the Health Trust Fund shall be bonded by a duly authorized surety company, qualified to write such bonds, in such amounts as may be determined from time to time by the Trustees. The Trustees may also bond such other employees of the Trust Fund as they deem necessary. The cost of the premiums of such bonds shall be paid out of the Health Trust Fund. The bonds shall be in such amounts as required by applicable law.

*Section 5.10 Execution of Documents.* The Trustees may, in the course of conducting the business of the Health Trust Fund, execute all instruments or documents or notices in the name of the Teamsters Local 639-Employers Health Fund which instruments shall be signed by the Chairman and Secretary, or one or more Trustees authorized by resolution. All persons shall be fully protected in reliance that such instruments or documents or notices have been duly authorized and are binding on the Trustees and the Teamsters Local 639-Employers Health Fund.


## ARTICLE VI
## CONTRIBUTIONS TO THE HEALTH TRUST FUND

*Section 6.1 Contributions Held in Trust.* The Trustees declare that they will receive and hold the contributions herein provided for or any other money, income, rebate, dividend or return of premium or property which may be entrusted to them, as Trustees hereunder, with the powers and duties and for the uses, purposes and trusts set forth in this Agreement and Declaration of Trust.

Neither the Union, the Company, the Employer, Employees, or their beneficiaries shall have any right, title or interest in or to the Trust Fund or any part thereof except as required by law.

*Section 6.2 Encumbrance of Benefits.* The Teamsters Local 639-Employers Health Fund shall constitute an irrevocable trust for the sole and exclusive benefit of Employees and their beneficiaries entitled to benefits under the Health Plan. All the benefits, monies or property shall be free from the interference and control of any creditor; and no benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process; and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee, or Beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Employee, or Beneficiary, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding become payable, or be liable to become payable to any person other than the Employee or Beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such Employee or Beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ, or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits as to the Trustees may seem best, directly for the support and maintenance of such Employee or Beneficiary.

The Employers' contributions to be paid into the Health Trust Fund shall not constitute or be deemed wages due to Employees nor shall the Health Trust Fund be liable for or subject to the debts, contracts or liabilities of the Union, the Company, the Employers, or Employees.

No Employee shall have the right to receive any part of the contributions made to this Health Trust Fund, except as provided by the Plan of Health Benefits.

*Section 6.3 Rate of Contributions.* The Employer shall pay to the Trustees each month the amount of money as established and provided for in Collective Bargaining Agreements or signed participation agreement.

*Section 6.4 Mode of Payment and Report on Contributions.* All contributions required by Collective Bargaining Agreements and signed participation agreements shall be paid to the Trustees, on or before the last day of the month following the month in which the Employee worked, and shall be in the manner and form determined by the Trustees. The Employers shall make all reports on contributions required by the Trustees in the performance of their duties under this Agreement and Declaration of Trust. The Trustees may, at any time, designate a qualified representative to conduct an audit of the payroll and wage records of any Employer to permit the Trustees to determine whether such Employer is making full payments to the Trustees in the amounts required by a Collective Bargaining Agreement or signed participation agreement. Whenever a discrepancy is disclosed by virtue of said audit, the Trustees may assess the entire costs of the audit to the Employer who shall be obligated to make payment therefore. Any data or information furnished to the Trustees by an Employer or by the Union shall be held confidential and may not be disclosed by the Trustees to any third person, unless the Trustees shall decide that such disclosure is necessary for the proper administration of the Fund.

*Section 6.5 Default in Payment.* Each Employer shall be responsible only for making contributions that it is obligated to make, on behalf of its Employees, pursuant to its Collective Bargaining Agreement or signed participation agreement. Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments, nor shall non-payment by one Employer of any contribution when due impose upon any other Employer, Company or the Union any obligation with respect to such payments.

When a Company fails to make payment in accordance with Section 6.3 and 6.4 of this Article, a ten percent (10%) liquidated damage amount may be imposed and that Company shall be obligated to pay interest on the prime rate or at the rate of one and one-half (1-½%) percent per month on any unpaid balance, whichever is greater. A Company may be suspended from participation in this Trust for failure to make payments. If within ninety (90) days after the date of suspension such Company does not pay the Trust all amounts owed plus ten percent (10%) thereof as liquidated damages, then in order to gain reinstatement to Trust participation, the said suspended Company must also post with the trustees a bond in an amount double that required to be paid to be reinstated. Thereafter, if said Company again is suspended for a period of ninety (90) days, the Trustees shall declare the bond forfeited.

The Trustees shall have the power to take any action necessary to enforce the payment of contributions due, including, but not limited to, the institution of or intervention in any legal, equitable or administrative proceedings. All reasonable expenses incurred by the Health Trust Fund in enforcing the payment of contributions due, including, but not limited to, reasonable attorneys' fees, accountants' fees and court costs plus an additional liquidated damage of ten percent (10%) shall be added to the obligation of the defaulting Employer. The Employer agrees that such sums, together with interest at the highest rate permitted by the laws of the state where suit is instituted, shall be included in any judgment issued by a court. The Trustees shall have the authority to settle or compromise any claims, suits, or legal actions for less than the full amount due when, in their discretion, they deem it in the best interest of the Fund.

The Trustees may adopt such additional rules and regulations to enforce the collection of delinquent contributions as they may deem necessary, including the adoption of special rules applicable to Employer(s) who are repeatedly delinquent.

## ARTICLE VII
## PLAN OF HEALTH BENEFITS

*Section 7.1 Benefits.* The Trustees shall have full discretion and authority to adopt a Health Plan which sets forth eligibility requirements, type, amount and duration of benefits that are to be provided equally and without discrimination to eligible Employees, based on what the Trustees determine to be within the financial limitations of the Health Trust Fund provided, however, that no benefits, other than health, annuity, death and related benefits, may be provided for or paid under this Agreement.

*Section 7.2 Eligibility Requirements for Benefits.* The Trustees shall have full discretion and authority to determine questions of eligibility requirements for benefits and duration of benefits and to adopt rules and regulations setting forth same, which shall be binding on the Employers, Employees, their Beneficiaries and any other persons making claims.

*Section 7.3 Written Plan of Benefits.* The detailed basis on which payment of benefits is to be made, pursuant to this Trust Agreement shall be set forth in the Health Plan. Such Health Plan shall be subject to change or modification by the Trustees from time to time as they may, in their discretion, determine is necessary or advisable based on the financial condition of the Fund.

The Board of Trustees shall reduce the benefits when and to the extent that they are advised by the actuary that it is necessary to make any such reduction in order to stay within the financial limitations of the Teamsters Local 639-Employers Health Fund.

Any change in or modification of the Health Plan made by the Board of Trustees shall be set forth in writing by the Trustees, with notice to the Company and the Union.

*Section 7.4 Internal Revenue Service and Labor Department Approval.* The Trust and the Health Plan adopted by the Trustees will continue as a qualified Trust and Plan so as to ensure that the Employer contributions to the Health Fund are proper deductions for income tax purposes. In addition, the Health Plan adopted by the Trustees shall qualify for approval by the Department of Labor as required by applicable law. It is the intention of the Trustees to be in full compliance with all requirements of the Internal Revenue Code and the Act. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service and Department of Labor to maintain approval of the Trust and Plan of Health Benefits.

*Section 7.5 Limitation of Employer's and Union's Obligations.* Neither any Company nor the Union shall have any responsibility for the payment of any benefit under the Health Plan. The obligation of each Employer under the Plan shall be a several one and shall be limited, except as required by the Act, to paying into the Health Trust Fund the contributions that it is obligated to make on behalf of its Employees under the provisions of its Collective Bargaining Agreement or signed stipulation.

## ARTICLE VIII
## ARBITRATION

*Section 8.1 Application of this Article.* In the event the Trustees cannot decide any matter, issue or dispute because of a tie vote, or the lack of a quorum at two (2) successive regular or special meetings of the Trustees, then, in either such event, the Employer Trustees and the Union Trustees will attempt to agree upon the designation of an impartial umpire to decide the dispute. If, within ten (10) days after the occurrence of either of the two events referred to above no impartial arbitrator is agreed upon, any four Trustees may petition the United States District Court for the District of Columbia to appoint an impartial umpire. The decision of the impartial umpire so agreed upon or appointed shall be final and binding on all parties and persons concerned.

*Section 8.2 Expenses of Arbitration.* All reasonable and necessary costs and expenses incidental to the proceedings before the impartial umpire, including the fee, if any, of the impartial umpire and attorneys' fees incurred by any Trustee in connection with such dispute, shall be a proper charge against the Trust Fund and the Trustees are authorized and directed to pay such charges.

ARTICLE IX
EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 9.1 Counterparts.* This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

## ARTICLE X
## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 10.1 Amendment by Trustees.* The provisions of this Agreement and Declaration of Trust may be amended to any extent and at any time by an instrument in writing, adopted by unanimous action of all Trustees; however, changes in the Health Plan may be made by majority action of the Trustees present and voting, in accordance with Article VII. Nothing in this Section shall limit the power of the Trustees to amend this Trust Agreement by unanimous action without the approval of the Company or the Union if consistent with the Collective Bargaining Agreements. It is expressly understood and agreed that no amendment shall direct any of the trust estate then in the hands of the Trustees from the purposes and objects of the Health Trust Fund.

*Section 10.2 Retroactive Effect.* Any Amendment, howsoever adopted, may have retroactive effect.

## ARTICLE XI
## TERMINATION OF TRUST

*Section 11.1 By the Trustees.* This Agreement and Declaration of Trust may be terminated by an instrument in writing, executed by the Trustees upon the happening of any one or more of the following events:

(a) If the Trust Fund is in the opinion of the Trustees, inadequate to carry out the intent and purpose of this Trust Agreement, or is inadequate to meet the payments due or to become due under this Trust Agreement and under the Health Plan to Employees and Beneficiaries;

(b) If there are no individuals living who can qualify as Employees or Beneficiaries hereunder;

(c) When there is no longer in force and effect Collective Bargaining Agreements or signed participation agreements requiring contributions to the Health Trust Fund.

*Section 11.2 Procedure on Termination.* In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall:

(a) make provision out of the Trust Fund for the payment of expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

(b) arrange for a final audit and report of their transactions and accounts for the purpose of termination of their Trusteeship;

(c) give any notice and prepare and file any reports which may be required by law; and

(d) apply the Health Trust Fund in accordance with the provisons of the Health Plan.

No part of the corpus or income of the Health Trust Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees and their Beneficiaries or the administration expenses of the Health Trust Fund. Under no circumstances shall any portion of the Health Trust Fund, either directly or indirectly, revert or accrue to the benefit of any contributing Employer, the Company or the Union.

*Section 11.3 Notification of Termination.* Upon termination of the Health Trust Fund, in accordance with this Article, the Trustees shall forthwith notify the Union, the Company and all other interested parties. The Trustees shall continue as Trustees for the purpose of winding up the affairs of the Health Trust Fund.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

*Section 12.1 Termination of Individual Employers.* An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer contractually obligated, pursuant to a Collective Bargaining Agreement or a signed participation agreement, to make contributions to this Health Trust Fund or when the Trustees determine that his participation as a contributing Employer shall terminate.

*Section 12.2 Vested Rights.* No Employee or any person claiming by or through an Employee shall have any right, title or interest in or to the Health Trust Fund, or any part thereof, except as may be specifically determined by the Trustees in conformation with the Act.

*Section 12.3 Situs.* This Agreement and Declaration of Trust is accepted by the Trustees in the District of Columbia and such place shall be deemed the situs of the Health Trust Fund continued hereunder. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the United States and of the District of Columbia.

*Section 12.4 Construction of Terms.* Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also used in the feminine gender or neuter gender, in all situations where they would so apply. Wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply. Wherever any words are used in this Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

*Section 12.5 Certification of Trustees' Action.* The Chairman and Secretary of the Trustees may execute any certificate of document jointly, on behalf of the Trustees, and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Health Trust Fund, or with the Trustees, shall be fully protected in reliance placed upon such duly executed document.

*Section 12.6 Notice.* Any notice required to be give, to the Trustees or any one or more of them pursuant to any provision of this Trust Agreement shall be deemed to have been given if mailed to such Trustee or Trustees at the last known address of the Trustee.

*Section 12.7 Severability.* Should any provision in this Agreement and Declaration of Trust, Health Plan or rules and regulations adopted thereunder, or in any Collective Bargaining Agreement, be deemed or held to be unlawful or invalid for any reason, such facts shall not adversely affect the provisions herein and therein contained, unless such illegality should make impossible or impractical the functioning of the Health Trust Fund and the Health Plan, and in such case, the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

*Section 12.8 Refund of Contributions.* In no event shall any Employer, directly or indirectly, receive any refund on contributions made by them to the Trust except as provided in the Act. Nor shall an Employer, directly or indirectly, participate in the disposition of the Health Trust Fund or receive any benefits from the Trust.

*Section 12.9 Article and Section Titles.* The Article and Section titles are included solely for convenience and shall not be construed to affect or modify any part of the provisions of this Trust Agreement or be construed as part thereof.

*Section 12.10 Medical or Other Benefits Payable from Trust Fund Only.* Medical and other benefits provided for by this Agreement and Declaration of Trust and/or Plan of Health Benefits shall be payable to the extent there are assets in the Fund to pay such medical and other benefits. Neither the parties to this Trust Agreement, the Trustees, nor the Employers guarantee the payment of medical or other benefits, in the event the assets of the Fund are insufficient for such purposes.

*Section 12.11 Complete Agreement.* The provisions of this Trust Agreement shall be deemed exclusively to define the powers, duties, rights and obligations of all persons who have a relation to the trust estate, except that the amount of the Employer contributions and dates for payment thereof shall be provided for in the Collective Bargaining Agreements and signed participation agreements.

CERTIFICATION: The Trustees certify that their signatures appear on the Master Trust Agreement on file at the Trust Office and in consideration for this certification the Company representative and the Union representative on execution of this copy of the Trust Agreement hereby waive the signatures of the Trustees and accept the printed names of the said parties in lieu of actual signatures.

IN WITNESS WHEREOF, the parties hereto have caused these presence to be executed this _____ day of _____, 19 ___.

TRUSTEES: _____    COMPANY _____

/s/ Jack Baker _____

/s/ Morris Davidson _____    BY _____

/s/ William McIntyre _____

/s/ Roger Olson _____    DATE _____

/s/ John Catlett _____

/s/ Joseph Connors _____    UNION: Drivers, Chauffeurs, and Helpers Local Union
                                        No. 639

/s/Philip Feaster _____    BY _____

/s/John Steger _____

# EXHIBIT B

# TEAMSTERS LOCAL 639—EMPLOYERS PENSION TRUST FUND
## Agreement and Declaration of Trust

## AMENDED AS OF JANUARY 18, 1984

THIS AGREEMENT is made and entered into at Washington, D.C. this _____ day of _____, 19__ by and between _____ hereinafter called the "COMPANY", and the DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION NO. 639 of Washington, D.C., hereinafter called the "UNION"; and JACK BAKER, MORRIS DAVIDSON, WILLIAM McINTYRE, and ROGER OLSON, Company Trustees; and JOHN CATLETT, JOSEPH CONNORS, PHILIP FEASTER, and JOHN STEGER, Union Trustees, hereinafter called "TRUSTEES"

*Recitals*

1. The Company and other Employers signatory to this Trust Agreement, are parties to collective bargaining agreements with the Union which provide that each Employer covered by any of said collective bargaining agreements will pay the sum specified therein, in the manner specified therein, for Employees under such collective bargaining agreements to a Plan of Pension Benefits established for the benefit of such Employees and their Dependents.

2. The parties have agreed that such payments shall be payable to and be deposited in the Trust Fund referred to in this Trust Agreement.

3. The purpose of this Trust Agreement is to provide for the revision and maintenance of such Trust Fund originally established by agreement of December 12, 1956 and as modified or amended subsequently, and for the revision and maintenance of such Plan of Pension Benefits authorized by the collective bargaining agreements.

4. The purpose of the Plan of Pension Benefits is to provide pension benefits for eligible Employees covered by the aforesaid collective bargaining agreements and eligible under the Plan, and such other persons as the Trustees may include from time to time, either through the purchase of insurance policies and annuity contracts or the payment of said benefits directly from the Fund.

*Provisions:*

In consideration of the foregoing, and of the mutual promises hereinafter provided, the parties agree as follows:

## ARTICLE I
## DEFINITIONS

Unless the context or subject matter requires otherwise, the following definitions shall govern this Agreement and Declaration of Trust:

*Section 1.1 Collective Bargaining Agreement.* The term "Collective Bargaining Agreement" as used herein, shall mean the Collective Bargaining Agreements in force and effect between the Union and the Company, together with any modifications, supplements or amendments thereto.

*Section 1.2 Union.* The term "Union" as used herein shall mean Drivers, Chauffeurs and Helpers Local Union No. 639 of Washington, D.C., affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and any Union affiliated with Teamsters' Joint Council No. 55, Washington, D.C. that enters into an Agreement and Declaration of Trust with the Trustees.

*Section 1.3 Company.* The term "Company" as used herein shall mean any corporation, partnership, or individual that has a collective bargaining agreement with the Union, or has signed a participation agreement with the Trust providing for payments into the Trust Fund on behalf of any Employer or such Employer covered by such Agreement. "Companies" means more than one such Company.

*Section 1.4 Employer.* The term "Employer" as used herein shall mean Company as defined immediately above, and further, shall mean the Union in its capacity as an Employer, except that the Union shall not participate in the selection of Employer Trustees.

*Section 1.5 Employees.* The term "Employees" as used herein, shall mean (1) those persons employed by any Employer as defined in Section 1.4 and on whose behalf payments are required to be made to the Pension Fund pursuant to a Collective Bargaining Agreement or a signed participation agreement; (2) paid Employees of the Union providing the Union contributes to the Pension Fund on behalf of each such Employee.

*Section 1.6 Participant.* The term "Participant" as used herein, shall mean any Employee of a Company or Union who is reported and for whom contributions are made to the Pension Trust Fund.

*Section 1.7 Beneficiary.* The term "Beneficiary" as used herein, shall mean a person designated by the terms of the Plan of Pension Benefits created pursuant to this Agreement and Declaration of Trust, who is or may become entitled to a benefit from this Fund.

*Section 1.8 Trustees.* The term "Trustees" as used herein, shall mean the Trustees designated in this Trust Agreement, together with their successors designated and appointed in accordance with the terms of this Trust Agreement.

*Section 1.9 Insurer.* The term "Insurer" as used herein, shall mean any insurance company qualified to do business in the District of Columbia selected to underwrite the Pension Plan by the Trustees.

*Section 1.10 Agreement and Declaration of Trust.* The term "Agreement and Declaration of Trust" as used herein, shall mean this instrument including any amendments, supplements and modifications hereto.

*Section 1.11 Act.* The term "Act" as used herein, shall mean the Employee Retirement Income Security Act of 1974, and amendments as may from time to time be made and any regulations promulgated pursuant to the provisions of the Act.

*Section 1.12 Plan of Pension Benefits.* The term "Plan of Pension Benefits" as used herein, shall mean the program of Pension benefits established by the Board of Trustees pursuant to this Agreement and Declaration of Trust.

*Section 1.13 Pension Trust Fund.* The term "Pension Trust Fund" or "Fund" or "Pension Fund" as used herein, shall mean the Trust Fund provided for in the Collective Bargaining Agreement between the Company and the Union which is continued by this restated Agreement and Declaration of Trust, and shall mean generally the monies, insurance policies and other things of value which comprise the corpus, income and additions to the Trust Fund.

## ARTICLE II
## CONTINUATION OF THE PENSION FUND

*Section 2.1 Continuation of the Pension Trust Fund.* There is hereby continued a Trust Fund known as the "Teamsters Local 639—Employers Pension Trust."

*Section 2.2 Composition of Pension Trust Fund.* This Trust Fund consists of (1) such sums of money as have been or shall be paid to the Pension Fund by the Employers as contributions required by Collective Bargaining Agreements or signed participation agreements; (2) all investments made therewith, the proceeds thereof and the income therefrom; (3) all other contributions and payments to the Trustees from any source whatsoever to the extent permitted by law; (4) all policies of insurance including dividends, interest, refunds or other sums payable to the Trustees on account of said policies; and (5) supplies, property and other assets used by the Trustees in the administration of the Pension Fund.

*Section 2.3 Purpose of Trust Fund.* The Trust Fund continued hereby is for the purpose of providing (1) Pension benefits and such other benefits as may be permitted by law under a plan of benefits adopted by the Trustees and (2) the means for financing the expenses of the Trustees in the operation and administration of the Pension Trust Fund, in accordance with this Agreement and Declaration of Trust. It is intended that this Trust be a multi-employer plan as that term is defined in Section 3(37) of the Act.

*Section 2.4 Irrevocable Purpose.* The Trust continued hereby shall constitute an irrevocable trust established for the exclusive benefit of employees, in accordance with Section 302(c) of the Labor Management Relations Act of 1947, as amended by Public Law 86-257, 1959, and in accordance with the Act.

## ARTICLE III
## BOARD OF TRUSTEES

*Section 3.1 Board of Trustees.*

(a) The operation and administration of the Pension Trust Fund shall be the responsibility of a Board of Trustees, composed of eight (8) Trustees, four (4) of whom shall be appointed by contributing Employers as defined in Article I, Section 1.4, and four (4) of whom shall be appointed by the Union.

(b) The Union Executive Board shall designate and appoint four Trustees of the Union in accordance with the Union's By-Laws. The Union Trustees' term shall be concurrent with the term of office of a majority of the Union Executive Board that initially appoints the Union Trustee. The President of the Union shall set forth the names of the Trustees so appointed by instrument in writing addressed to the Board of Trustees.

(c) The contributing Employers shall appoint Trustees pursuant to regulations adopted from time to time by the Trustees previously appointed by the contributing Employers. To be eligible to participate in the election of Trustees a Company must:

(1) be a non-delinquent Employer, and

(2) not have been delinquent more than two times in the twenty-four (24) months preceding the election date.

*Section 3.2 Acceptance of Trusteeship.* A Trustee shall execute a written acceptance in a form satisfactory to the Trustees and consistent with the Act and thereby shall be deemed to have accepted the Trust created and established by this Trust Agreement and to have consented to act as Trustee and to have agreed to administer the Pension Trust Fund as provided herein. Such written acceptance shall be filed at the office of the Fund.

*Section 3.3 Name.* The Trustees shall conduct the business of the Pension Trust Fund and execute all documents and instruments in the name of the Teamsters Local 639—Employers Pension Trust Fund.

*Section 3.4 Resignation and Replacement of Trustees.* A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving (30) days' notice in writing to the remaining Trustees and to the party by whom he was designated, or such shorter notice as the remaining Trustees may accept as sufficient. The notice shall state the date on which such resignation shall take effect; and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

In the event of the resignation, death, incapacity or the unwillingness of any of the Trustees to serve, a successor Trustee shall be designated by the Union Executive Board to replace a Union Trustee, or by the remaining Company Trustees to replace a Company Trustee. The remaining Trustees shall be notified of such designation by an instrument in writing.

Any successor Trustee designated as herein provided shall affix his signature to a certificate of acceptance of this Agreement and Declaration of Trust as provided in Section 2 of this Article, and shall, without further act, become vested with all the estate rights, powers, discretions and duties of his predecessor Trustee.

Any retiring Trustee shall forthwith turn over to the remaining Trustees at the office of the Pension Fund any and all records, books, documents, monies and other property in his possession which are a part of the Pension Trust Fund and incident to the fulfillment of the Trustees' duties and responsibilities under this Agreement and Declaration of Trust.

The powers of the Trustees to act, as above provided in this Trust Agreement, shall not be impaired or limited in any way pending the designation of a successor Trustee to fill any vacancy.

*Section 3.5 Term of Trustees.* The full terms of all Trustees shall be four years commencing as of January 18, 1984 and thereafter on successive fourth anniversaries of such date, unless shortened in the case of a Union Trustee by application of Section 3.1(b) of this Article.

*Section 3.6 Payment of Trustees.* The Trustees shall not receive compensation for the performance of their duties as Trustees but may be reimbursed for all reasonable and necessary expenses which they incur in the performance of their duties. Any

Trustee who is not otherwise employed by a contributing Company or the Union as defined herein shall be paid such reasonable compensation as shall from time to time be agreed upon by the Board of Trustees.

## ARTICLE IV
## MEETINGS AND DECISIONS OF THE TRUSTEES

*Section 4.1 Officers of the Trustees.* The Trustees shall select from among their number a Chairman, and a Secretary. When the Chairman has been selected from the Trustees appointed by the Union the Secretary shall be selected from the Trustees appointed by the Employers or vice versa.

*Section 4.2 Meetings of the Trustees.* Regular meetings of the Trustees shall be held at such times and places as may be agreed upon by the Board of Trustees. Reasonable notice of the meetings shall be provided, except that meetings may be held at any time without notice if all the Trustees consent thereto in writing. Special meetings may be called by the Chairman and Secretary or any four (4) Trustees upon five (5) days' written notice to the other four (4) Trustees. The Trustees shall meet at least once every three months and at such other times as they deem it necessary to transact their business.

*Section 4.3 Action of Trustees Without Meeting.* Action by the Trustees may also be taken by them in writing, without a meeting, or by telephone conference call, or by wire, provided that in such cases, there shall be unanimous concurrence of all Trustees.

*Section 4.4 Quorum.* In all meetings of the Trustees, four (4) Trustees shall constitute a quorum for the transaction of business, provided there are at least two (2) Trustees appointed by the Union, and at least two (2) Trustees appointed by Employers present at such meetings. At all meetings, each Trustee shall have one vote and the Employer and Union appointed Trustees collectively shall have equal voting strength.

*Section 4.5 Majority Vote of Trustees.* All action by Trustees shall be by majority decision of those voting. Such majority decision shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote or the lack of a quorum at two successive meetings, the matter shall be resolved pursuant to the procedure set forth in Article VIII hereof.

*Section 4.6 Minutes of Meetings.* The Trustees or their designee shall keep minutes of all meetings, but such minutes need not be verbatim. Copies of the minutes shall be sent to all the Trustees and to such other persons as the Trustees may direct. Minutes of a meeting shall be reviewed and approved by the Trustees at the next meeting.

## ARTICLE V
## POWERS AND DUTIES OF TRUSTEES

*Section 5.1 Conduct of Trust Business.* The Trustees shall have authority to control and manage the operation and administration of the Pension Fund and shall conduct the business and activities of the Pension Fund in accordance with this Trust Agreement and applicable law. The Trustees shall hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees shall be the Named Fiduciary and the Administrator of the Pension Fund as those terms are defined in the Act.

*Section 5.2 Use of the Trust Fund for Expenses and to Provide Benefits.*

(a) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses (i) of collecting employer contributions and payments and other monies and property to which they may be entitled; (ii) of administering the affairs of this Trust, including the purchase or lease of real property, material, supplies and equipment; (iii) of obtaining such legal, actuarial, investment, administrative, accounting clerical and other assistance or employees as they may find necessary or appropriate; and (iv) of performing such other acts as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

(b) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of retirement and related benefits to eligible Employees and Beneficiaries in accordance with the terms, provisions and conditions of the Plan of Pension Benefits to be agreed upon by the Trustees pursuant to this Agreement and Declaration of Trust.

*Section 5.3 Construction and Determinations by Trustees.* Subject to the stated purposes of the Pension Fund and the provisions of this Trust Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits including the self funding of benefits, and all other related matters. They shall have full power to construe the provisions of this Agreement and Declaration of Trust and the Plan of Pension Benefits, and the terms used therein and any rules and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon the Union, the Company, the Employers, Employees and their Beneficiaries.

*Section 5.4 General Powers.* The Trustees, are hereby empowered, in addition to such other powers as are set forth herein or conferred by law, to:

(a) demand, collect, receive and hold contributions and to take such steps as may be deemed necessary or desirable to collect contributions due the Trust Fund;

(b) compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable; commence or defend any legal, equitable or administrative proceedings brought in connection with the Pension Trust Fund and represent the Pension Trust Fund in all such proceedings;

(c) pay or provide for the payment of all reasonable and necessary expenses of collecting contributions and payments;

(d) enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and the administration of the Pension Fund;

(e) enter into an investment contract or agreement with an insurance company or companies for the investment and reinvestment of assets of the Trust Fund;

(f) enter into a group annuity contract or contracts and any agreements supplemental thereto, with an insurance company or companies for the purpose of investing all or a portion of the Fund held by them in Trust. Any such contract may provide that deposits thereunder be allocated to the insurance company's general account, or solely to one or more of its separate accounts maintained for the collective investment of the assets of qualified retirement plans, including but not limited to, a separate account, invested primarily in real property or any interest therein, or to the insurance company's general account and one or more of its separate accounts. The insurance company issuing such contract shall have the exclusive responsibility for the investment and management of any amounts held under such contract, and shall have all the powers with respect to the assets of the Fund held thereunder as the Trustees have with respect to the assets of the Fund held under this Agreement and Declaration of Trust;

(g) invest, reinvest and have invested and reinvested all funds of this Pension Trust Fund, without distinction between principal and income, in any type of investment the Trustees deem prudent. The Trustees shall have the authority, in respect to any stocks, bonds or other property, held by them as Trustees, to exercise all such rights, powers and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right;

(h) register securities or other Pension Trust Fund property in the name of the Pension Trust Fund or of the Trustees, or in the names of one or more nominees of the Trustees and to hold instruments in bearer form;

(i) enter into and terminate agency or custody agreements with banks, savings and loan associations or trust companies chosen by them, under which said agreements the Trustees may turn over to said banks, savings and loan associations, or trust companies a portion or all of the funds held by them in this Trust for safekeeping, investment or reinvestment, on such terms as the Trustees deem advisable;

(j) co-mingle at their discretion, all or any portion of the assets of the Pension Trust Fund, with assets of other qualified employee benefit plans for the purpose of investment in, or through, investment trusts for employee benefit plans. Said investment may, at the Trustees' discretion, be in the equity and/or fixed income funds of such investment trusts. To the extent of this Pension Trust Fund's participation in any investment trust, that investment trust shall constitute a part of this Agreement and Declaration of Trust;

(k) sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Pension Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith;

(l) pay or provide for the payment of all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Pension Trust Fund or any money, property or securities forming a part thereof;

(m) retain such portion of the monies of the Pension Trust Fund in cash balances as the Trustees may deem desirable; sole discretion, deem necessary or desirable to carry out the purposes of such Pension Trust Fund;

(o) allocate fiduciary responsibilities among the Trustees, or Committees of the Trustees, delegate fiduciary duties to persons other than Trustees and delegate Trustees responsibilities to an investment manager as provided in this Agreement and Declaration of Trust and in accordance with the requirements of the Act;

(p) appoint an investment manager or managers, as that term is defined in the Act, and enter into an agreement with such investment manager, in accordance with the requirements of the Act, delegating to the investment manager the responsibility to control and manage, including the power to acquire and dispose of, such of the assets of the Pension Trust Fund as the Trustees may specify;

(q) enter into an agreement or arrangement with other similar trust funds for the operation of a joint administrative office, which, shall administer the office or offices of the Pension Trust Fund, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services furnished by the consulting actuary, prepare (in cooperation, where appropriate, with the consulting actuary and independent auditor) all reports and other documents to be prepared, filed or disseminated by or on behalf of the Pension Trust Fund in accordance with law, assist in the collection of contributions required to be paid to the Pension Trust Fund by Employers and perform such other duties and furnish such other services as may be assigned, delegated or directed or as may be contracted by or on behalf of the Trustees;

(r) employ a reputable and qualified investment consultant to assist the Trustees in exercising their investment powers and authority by reviewing the investment policy and types and kinds of investments made by the Trustees and/or the investment manager(s) and to contract for investment measurement services;

(s) engage one or more independent qualified public accountants, one or more enrolled actuaries and qualified legal counsel to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary;

(t) pay or provide for the payment from the Trust Fund of all costs incurred in employing such professionals, consultants, and managers as the Trustees deem necessary and in accordance with this Trust Agreement and applicable law;

(u) designate an agent for service of legal process for the Pension Trust Fund;

(v) obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Pension Trust Fund as such, as well as employees or agents of the Trustees and of the Pension Trust Fund, while engaged in business and related activities for and on behalf of the Pension Trust Fund (i) with respect to liability to others as a result of acts, errors or omissions of such Trustee or Trustees, employees or agents, respectively, and (ii) with respect to injuries received or property damage suffered by them. The cost of the premiums for such policies of insurance shall be paid out of the Pension Trust Fund to the extent permitted by the Act;

(w) enter into reciprocal agreements (on such terms as the Trustees deem advisable) with trustees of other pension funds to permit employees covered hereby to receive pension credits in this Fund when working outside the geographical jurisdiction and/or trade jurisdiction covered by Collective Bargaining Agreements, as defined herein, and to receive from other pension funds contributions made on behalf of employees not normally covered under this Pension Fund, to permit those employees to receive Pension credits in their home funds;

(x) merge or integrate this Fund into or with another pension fund or to accept the transfer of all or a portion of the assets of another pension fund in accordance with the requirements of the Act;

(y) establish such rules and regulations necessary to effectuate the purposes of this Agreement and Declaration of Trust and not inconsistent with the terms hereof;

(z) do any and all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective and purpose of enabling the Employees to obtain Pension benefits.

*Section 5.5 Personal Liability.* No Trustee shall be liable or responsible for his own acts or for any acts or defaults of any other fiduciary or party in interest or any other person except to the extent liability is imposed by the Act.

The Trustees, to the extent permitted by the Act, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

*Section 5.6 Reliance on Written Instruments and Professional Advice.* Any Trustee, to the extent permitted by the Act, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees or the Chairman and Secretary as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

The Trustees may, from time to time, consult with the Trust Fund's legal counsel, actuary and any other professionals, and to the extent permitted by the Act, the Trustees shall be protected in acting upon the advice of such professionals.

*Section 5.7 Reliance by Others.* No party dealing with the Trustees shall be obligated to see to the application of any funds or property of the Trust Fund to the stated Trust or to see that the terms of this Trust Agreement have been complied with or to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon that at the time of the execution of said instrument, the Trust was in full force and effect, that the instrument was executed in accordance with the terms and conditions of this Trust Agreement, and that the Trustees were duly authorized and empowered to execute the instrument.

*Section 5.8 Books of Accounts.* The Trustees shall cause to be kept true and accurate books of accounts and records of all transactions of the Pension Trust Fund which shall be open to the inspection of each of the Trustees at all times and which shall be audited at least annually and at such other times as the Trustees deem appropriate by a certified public accountant selected by the Trustees. A complete and detailed statement of the annual audit, including the benefits and administration costs, shall be made available to the Union and to each Company requesting a copy thereof.

*Section 5.9 Surety Bonds.* The Trustees and any employees who are empowered and authorized to sign checks and handle monies of the Pension Trust Fund shall be bonded by a duly authorized surety company, qualified to write such bonds, in such amounts as may be determined from time to time by the Trustees. The Trustees may also bond such other employees of the Trust Fund as they deem necessary. The cost of the premiums of such bonds shall be paid out of the Pension Trust Fund. The bonds shall be in such amounts as required by applicable law.

*Section 5.10 Execution of Documents.* The Trustees may, in the course of conducting the business of the Pension Trust Fund, execute all instruments or documents or notices in the name of the Teamsters Local 639—Employers Pension Fund which instruments shall be signed by the Chairman and Secretary, or one or more Trustees authorized by resolution. All persons shall be fully protected in reliance that such instruments or documents or notices have been duly authorized and are binding on the Trustees and the Teamsters Local 639—Employers Pension Fund.

## ARTICLE VI
## CONTRIBUTIONS TO THE PENSION TRUST FUND

*Section 6.1 Contributions Held in Trust.* The Trustees declare that they will receive and hold the contributions herein provided for or any other money, income, rebate, dividend or return of premium or property which may be entrusted to them, as Trustees hereunder, with the powers and duties and for the uses, purposes and trusts set forth in this Agreement and Declaration of Trust.

Neither the Union, the Company, the Employer, Employees, or their beneficiaries shall have any right, title or interest in or to the Trust Fund or any part thereof except as required by law.

*Section 6.2 Encumbrance of Benefits.* The Teamsters Local 639—Employers Pension Fund shall constitute an irrevocable trust for the sole and exclusive benefit of Employees and their beneficiaries entitled to benefits under the Plan of Pension Benefits. All the benefits, monies or property shall be free from the interference and control of any creditor; and no benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process; and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee, or Beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Employee, or Beneficiary, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding become payable, or be liable to become payable to any person other than the Employee or Beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such Employee or Beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ, or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits as to the Trustees may seem best, directly for the support and maintenance of such Employee or Beneficiary.

The Employers' contributions to be paid into the Pension Trust Fund shall not constitute or be deemed wages due to Employees nor shall the Pension Trust Fund be liable for or subject to the debts, contracts or liabilities of the Union, the Company, the Employers, or Employees.

No Employee shall have the right to receive any part of the contributions made to this Pension Trust Fund, except as provided by the Plan of Pension Benefits.

*Section 6.3 Rate of Contributions.* The Employer shall pay to the Trustees each month the amount of money as established and provided for in Collective Bargaining Agreements or signed participation agreement.

*Section 6.4 Mode of Payment and Report on Contributions.* All contributions required by Collective Bargaining Agreements and signed participation agreements shall be paid to the Trustees, on or before the last day of the month following the month in which the Employee worked, and shall be in the manner and form determined by the Trustees. The Employers shall make all reports on contributions required by the Trustees in the performance of their duties under this Agreement and Declaration of

Trust. The Trustees may, at any time, designate a qualified representative to conduct an audit of the payroll and wage records of any Employer to permit the Trustees to determine whether such Employer is making full payments to the Trustees in the amounts required by a Collective Bargaining Agreement or signed participation agreement. Whenever a discrepancy is disclosed by virtue of said audit, the Trustees may assess the entire costs of the audit to the Employer who shall be obligated to make payment therefore. Any data or information furnished to the Trustees by an Employer or by the Union shall be held confidential and may not be disclosed by the Trustees to any third person, unless the Trustees shall decide that such disclosure is necessary for the proper administration of the Fund.

Section 6.5 Default in Payment. Each Employer shall be responsible only for making contributions that it is obligated to make, on behalf of its Employees, pursuant to its Collective Bargaining Agreement or signed participation agreement. Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments, nor shall non-payment by one Employer of any contribution when due impose upon any other Employer, Company or the Union any obligation with respect to such payments.

When a Company fails to make payment in accordance with Section 6.3 and 6.4 of this Article, a ten percent (10%) liquidated damage amount may be imposed and that Company shall be obligated to pay interest on the prime rate or at the rate of one and one-half (1½) percent per month on any unpaid balance, whichever is greater.

The Trustees shall have the power to take any action necessary to enforce the payment of contributions due, including, but not limited to, the institution of or intervention in any legal, equitable or administrative proceedings. All reasonable expenses incurred by the Pension Trust Fund in enforcing the payment of contributions due, including, but not limited to, reasonable attorneys' fees, accountants' fees and court costs plus an additional liquidated damage of ten percent (10%) shall be added to the obligation of the defaulting Employer. The Employer agrees that such sums, together with interest at the highest rate permitted by the laws of the state where suit is instituted, shall be included in any judgment issued by a court. The Trustees shall have the authority to settle or compromise any claims, suits, or legal actions for less than the full amount due when, in their discretion, they deem it in the best interest of the Fund.

The Trustees may adopt such additional rules and regulations to enforce the collection of delinquent contributions as they may deem necessary, including the adoption of special rules applicable to Employer(s) who are repeatedly delinquent.

## ARTICLE VII
## PLAN OF PENSION BENEFITS

Section 7.1 Benefits. The Trustees shall have full discretion and authority to adopt a Plan of Pension Benefits which sets forth eligibility requirements, type, amount and duration of benefits that are to be provided equally and without discrimination to eligible Employees, based on what the Trustees determine to be within the financial limitations of the Pension Trust Fund provided, however, that no benefits, other than pension, annuity, death and related benefits, may be provided for or paid under this Agreement.

Section 7.2 Eligibility Requirements for Benefits. The Trustees shall have full discretion and authority to determine questions of eligibility requirements for benefits and duration of benefits and to adopt rules and regulations setting forth same, which shall be binding on the Employers, Employees, their Beneficiaries and any other persons making claims.

Section 7.3 Written Plan of Benefits. The detailed basis on which payment of benefits is to be made, pursuant to this Trust Agreement shall be set forth in the Plan of Pension Benefits. Such Plan of Pension Benefits shall be subject to change or modification by the Trustees from time to time as they may, in their discretion, determine is necessary or advisable based on the financial condition of the Fund.

The Board of Trustees shall reduce the benefits when and to the extent that they are advised by the actuary that it is necessary to make any such reduction in order to stay within the financial limitations of the Teamsters Local 639—Employers Pension Fund.

Any change in or modification of the Plan of Pension Benefits made by the Board of Trustees shall be set forth in writing by the Trustees, with notice to the Company and the Unioin.

Section 7.4 Internal Revenue Service and Labor Department Approval. The Trust and the Plan of Pension Benefits adopted by the Trustees will continue as a qualified Trust and Plan so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. In addition, the Plan of Pension Benefits adopted by the Trustees shall qualify for approval by the Department of Labor as required by applicable law. It is the intention of the Trustees to be in full compliance with all requirements of the Internal Revenue Code and the Act. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service and Department of Labor to maintain approval of the Trust and Plan of Pension Benefits.

Section 7.5 Limitation of Employer's and Union's Obligations. Neither any Company nor the Union shall have any responsibility for the payment of any benefit under the Plan of Pension Benefits. The obligation of each Employer under the Plan shall be a several one and shall be limited, except as required by the Act, to paying into the Pension Trust Fund the contributions that it is obligated to make on behalf of its Employees under the provisions of its Collective Bargaining Agreement or signed stipulation.

## ARTICLE VIII
## ARBITRATION

Section 8.1 Application of this Article. In the event the Trustees cannot decide any matter, issue or dispute because of a tie vote, or the lack of a quorum at two (2) successive regular or special meetings of the Trustees, then, in either such event, the Employer Trustees and the Union Trustees will attempt to agree upon the designation of an impartial umpire to decide the dispute. If, within ten (10) days after the occurrence of either of the two events referred to above no impartial arbitrator is agreed upon, any four Trustees may petition the United States District Court for the District of Columbia to appoint an impartial umpire. The decision of the impartial umpire so agreed upon or appointed shall be final and binding on all parties and persons concerned.

Section 8.2 Expenses of Arbitration. All reasonable and necessary costs and expenses incidental to the proceedings before the impartial umpire, including the fee, if any, of the impartial umpire and attorneys' fees incurred by any Trustee in connection with such dispute, shall be a proper charge against the Trust Fund and the Trustees are authorized and directed to pay such charges.

## ARTICLE IX
## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 9.1 Counterparts.* This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

## ARTICLE X
## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 10.1 Amendment by Trustees.* The provisions of this Agreement and Declaration of Trust may be amended to any extent and at any time by an instrument in writing, adopted by unanimous action of all Trustees; however, changes in the Plan of Pension Benefits may be made by majority action of the Trustees present and voting, in accordance with Article VII. Nothing in this Section shall limit the power of the Trustees to amend this Trust Agreement by unanimous action without the approval of the Company or the Union if consistent with Collective Bargaining Agreements. It is expressly understood and agreed that no amendment shall direct any of the trust estate then in the hands of the Trustees from the purposes and objects of the Pension Trust Fund.

*Section 10.2 Retroactive Effect.* Any Amendment, howsoever adopted, may have retroactive effect.

## ARTICLE XI
## TERMINATION OF TRUST

*Section 11.1 By the Trustees.* This Agreement and Declaration of Trust may be terminated by an instrument in writing, executed by the Trustees upon the happening of any one or more of the following events:

(a) If the Trust Fund is, in the opinion of the Trustees, inadequate to carry out the intent and purpose of this Trust Agreement, or is inadequate to meet the payments due or to become due under this Trust Agreement and under the Plan of Pension Benefits to Employees and Beneficiaries;

(b) If there are no individuals living who can qualify as Employees or Beneficiaries hereunder;

(c) When there is no longer in force and effect Collective Bargaining Agreements or signed participation agreements requiring contributions to the Pension Trust Fund.

*Section 11.2 Procedure on Termination.* In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall:

(a) make provision out of the Trust Fund for the payment of expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

(b) arrange for a final audit and report of their transactions and accounts for the purpose of termination of their Trusteeship;

(c) give any notice and prepare and file any reports which may be required by law; and

(d) apply the Pension Trust Fund in accordance with the provisions of the Plan of Pension Benefits.

No part of the corpus or income of the Pension Trust Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees and their Beneficiaries or the administration expenses of the Pension Trust Fund. Under no circumstances shall any portion of the Pension Trust Fund, either directly or indirectly, revert or accrue to the benefit of any contributing Employer, the Company or the Union.

*Section 11.3 Notification of Termination.* Upon termination of the Pension Trust Fund, in accordance with this Article, the Trustees shall forthwith notify the Union, the Company and all other interested parties. The Trustees shall continue as Trustees for the purpose of winding up the affairs of the Pension Trust Fund.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

*Section 12.1 Termination of Individual Employers.* An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer contractually obligated, pursuant to a Collective Bargaining Agreement or a signed participation agreement, to make contributions to this Pension Trust Fund or when the Trustees determine that his participation as a contributing Employer shall terminate.

*Section 12.2 Vested Rights.* No Employee or any person claiming by or through an Employee shall have any right, title or interest in or to the Pension Trust Fund, or any part thereof, except as may be specifically determined by the Trustees in conformation with the Act.

*Section 12.3 Situs.* This Agreement and Declaration of Trust is accepted by the Trustees in the District of Columbia and such place shall be deemed the situs of the Pension Trust Fund continued hereunder. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the United States and of the District of Columbia.

*Section 12.4 Construction of Terms.* Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also used in the feminine gender or neuter gender, in all situations where they would so apply. Wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply. Wherever any words are used in this Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

*Section 12.5 Certification of Trustees' Action.* The Chairman and Secretary of the Trustees may execute any certificate of document jointly, on behalf of the Trustees, and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Trust Fund, or with the Trustees, shall be fully protected in reliance placed upon such duly executed document.

*Section 12.6 Notice.* Any notice required to be given, to the Trustees or any one or more of them pursuant to any provision of this Trust Agreement shall be deemed to have been given if mailed to such Trustee or Trustees at the last known address of the Trustee.

*Section 12.7 Severability.* Should any provision in this Agreement and Declaration of Trust, Plan of Pension Benefits or rules and regulations adopted thereunder, or in any Collective Bargaining Agreement, be deemed or held to be unlawful or invalid for any reason, such facts shall not adversely affect the provisions herein and therein contained, unless such illegality should make impossible or impractical the functioning of the Pension Trust Fund and the Plan of Pension Benefits, and in such case, the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

*Section 12.8 Refund of Contributions.* In no event shall any Employer, directly or indirectly, receive any refund on contributions made by them to the Trust except as provided in the Act. Nor shall an Employer, directly or indirectly, participate in the disposition of the Pension Trust Fund or receive any benefits from the Trust.

*Section 12.9 Article and Section Titles.* The Article and Section titles are included solely for convenience and shall not be construed to affect or modify any part of the provisions of this Trust Agreement or be construed as part thereof.

*Section 12.10 Pension or Other Benefits Payable from Trust Fund Only.* Pension and other benefits provided for by this Agreement and Declaration of Trust and/or Plan of Pension Benefits shall be payable to the extent there are assets in the Fund to pay such pension and other benefits. Neither the parties to this Trust Agreement, the Trustees, nor the Employers guarantee the payment of pension or other benefits, in the event the assets of the Fund are insufficient for such purposes.

*Section 12.11 Complete Agreement.* The provisions of this Trust Agreement shall be deemed exclusively to define the powers, duties, rights and obligations of all persons who have a relation to the trust estate, except that the amount of the Employer contributions and dates for payment thereof shall be provided for in the Collective Bargaining Agreements and signed participation agreements.

CERTIFICATION: The Trustees certify that their signatures appear on the Master Trust Agreement on file at the Trust Office and in consideration for this certification the Company representative and the Union representative on execution of this copy of the Trust Agreement hereby waive the signatures of the Trustees and accept the printed names of the said parties in lieu of actual signatures.

IN WITNESS WHEREOF, the parties hereto have caused these presence to be executed this _____ day of _____, 19 ___.

TRUSTEES: _____     COMPANY _____

/s/ Jack Baker _____

/s/ Morris Davidson _____     BY _____

/s/ William McIntyre _____

/s/ Roger Olson _____     DATE _____

/s/ John Catlett _____

/s/ Joseph Connors _____     UNION: Drivers, Chauffeurs, and Helpers Local Union
                                                 No. 639

/s/Philip Feaster _____     BY _____

/s/John Steger _____

# EXHIBIT C

# COLLECTIVE BARGAINING AGREEMENT

## By and Between

## BOILER AND FURNACE CLEANERS, INC.

### and

## DRIVERS, CHAUFFEURS AND HELPERS
## LOCAL UNION #639
### Affiliated with the
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

**Term of Agreement**

**October 16, 2004**
**to**
**October 15, 2007**

# A G R E E M E N T

This Agreement is made and entered into this 16th day of October, 2004 by and between **BOILER AND FURNACE CLEANERS, INC.** (hereinafter referred to as the "Company") and the **DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION #639**, affiliated with the **INTERNATIONAL BROTHERHOOD OF TEAMSTERS** (hereinafter referred to as the "Union").

**WITNESSETH:** That for and in consideration of the mutual promises herein made, one party to the other, the parties agree as follows:

## ARTICLE 1
## RECOGNITION

The Employer recognizes and acknowledges that the Local Union is the sole and exclusive representative of all employees in the classifications of work covered by this Agreement for the purposes of collective bargaining as provided by the National Labor Relations Act.

## ARTICLE 2
## SUBCONTRACTING

For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that no work or services of this kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or non-unit employees, unless other wise provided in this Agreement.

boiler2001.con                           - 1 -

However, it is understood that work more than 75 miles from the Hyattsville yard may be performed by persons outside of the bargaining unit, provided such work is first offered to employees covered by this Agreement.

## ARTICLE 3
## TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or any part thereof is sold, leased, transferred, or taken over by sale, transfer, lease assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof.

It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of transaction as herein described.

In the event the Employer fails to give the notice herein required and/or fails to require the purchaser, transferee, or lessee to assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all assumption of the terms of the contract.

## ARTICLE 4
## UNION SECURITY

All present employees who are members of the Union on the effective date of this subsection or on the date of execution of this Agreement, whichever is later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this subsection or the execution date of this Agreement, whichever is the later.

boiler2001.con                          - 2 -

This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon written notice to the Employer by the Union to such effect, to discharge such person.

In the event of any change in the law during the term of this Agreement, the Employer agrees that the Union will be entitled to receive the maximum Union security that may be lawfully permissible.

No provision of this Article shall apply in any state to the extent that it may be prohibited by state law. If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

If any provision of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law and shall be renegotiated for the purpose of adequate replacement. If such negotiations shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal and economic recourse.

## ARTICLE 5
## CHECK-OFF

The Employer agrees to deduct from the pay of all regular employees covered by this Agreement the dues, initiation fees, and/or uniform assessments of the Union and agrees to remit to the Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

A probationary period of ninety (90) consecutive working days shall apply in the case of each newly-hired employee during which the employee may be terminated for any reason without reference to seniority and grievance provision of this Agreement, and there shall be no obligation to rehire such employee under any circumstances.

boiler2001.con                          - 3 -

# ARTICLE 6
## JOB STEWARDS

The Employer recognizes the right of the Union to designate job stewards and alternates. The authority of job stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

1. The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement;

2. The collection of dues when authorized by appropriate legal Union action; and

3. The transmission of such messages and information which shall originate with and are authorized by the Local Union or its officers, provided such messages and information:

    (a) have been reduced in writing, or

    (b) if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Stewards shall be permitted to investigate, present and process grievances on or of the property of the Employer, without loss of time or pay. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

In instances of layoff and recall, the steward(s) shall be the last employee(s) to be laid off and the first employee(s) to be recalled. For the purposes of this provision, "Layoff" is defined to include any instance, no matter how short its duration, where, because of lack of work, one or more employees do not work. This means that if any employee works, the steward(s) shall work.

The purpose of this provision is to assure that whenever the Employer is operating, the steward(s) will be on the job to administer this Collective Bargaining Agreement.

boiler2001.con                                        - 4 -

Job stewards and alternates have no authority to take strike action or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline including discharge, in the event the shop steward has taken unauthorized strike action, slowdown or work stoppage in violation of the Agreement.

## ARTICLE 7
## GRIEVANCE PROCEDURE

A grievance is hereby jointly defined to be any controversy, complaint, misunderstanding or dispute.

Any grievance arising between the Company and the Union or an employee represented by the Union shall be settled in the following manner:

### Step 1

The aggrieved employee or employees must present the grievance to the Shop Steward within five (5) working days after knowledge of the grievance or the reason for the grievance has occurred, except no time limit shall apply in case of violation of wage provisions of this Agreement. If a satisfactory settlement is not effected with the foreman within three (3) working days, the Shop Steward and employee shall submit such grievance in writing to the Union's Business Representative.

### Step 2

The Business Representative shall then take the matter up with a representative of the Company with authority to act upon such grievance. A decision must be made within five (5) working days.

boiler2001.con

Step 3

> If the Company fails to comply with any settlement of the grievance or fails to comply with the procedures of this Article, the Union has the right to take all legal and economic action to enforce its demands.

Any Shop Steward shall be permitted to leave his or her work to investigate and adjust the grievance of any employee within the steward's jurisdiction, after notification to his or her Supervisor. Employees shall have the Shop Steward or a representative of the Union present during the discussion of any grievance with representatives of the Company.

If no satisfactory settlement can be agreed upon, the parties shall select a mutually agreeable and impartial Arbitrator within fourteen (14) days after disagreement. In the event they are unable to agree, the matter shall be referred to the Federal Mediation and Conciliation Service the next day. After the Service submits a list of arbitrators to the Union and the Company, they shall reply with their preferred selections no later than three (3) days after receipt of such list. The expense of the Arbitrator selected or appointed shall be borne equally by the Company and the Union.

The Arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under arbitrability. In the event the position of the Union is sustained, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him or her had there been no grievance.

A mutual settlement of the grievance pursuant to the procedures set forth herein and/or a decision of the Arbitrator will be final and binding on all parties and the employees involved. If the Company fails to comply with the award of the Arbitrator or with the procedures of this Article, the Union has a right to take all legal and economic action to enforce compliance.

Notwithstanding anything herein contained, it is agreed that in the event the Employer is delinquent at the end of a period in the payment of its contribution to the Health and Welfare Fund and/or Pension Fund created under the Agreement, in accordance with the rules and regulations of the Trustees of such funds, after the proper official of the Local Union has given seventy-two (72) hours' notice to the Employer of such employees in Health and Welfare and/or Pension payments, the employees or their representatives shall have the right to take such action as may be

boiler2001.com

necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

The Local Union, or its authorized representative, shall have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute or records pertaining to a specific grievance.

The procedures set forth herein may be invoked only by any authorized representative of the Employer and the Union.

## ARTICLE 8
## DISCHARGE OR SUSPENSION

The Employer shall not discharge or suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) written warning notice of the complaint against such employee to the employee and to the employee's Local Union, except that no warning notice need be given to an employee before being discharged for a major offense such as dishonesty, drunkenness, recklessness resulting in a serious accident while on duty or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for the period of more than nine months from date of said warning notice. Discharge must be by proper written notice to the employee and Local Union affected. Any employee discharged must be paid in full upon discharge for all wages owed to the employee by the Employer, including earned vacation pay.

A discharged or suspended employee must advise the Local Union in writing, within five (5) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension. Notice of appeal from discharge or suspension must be made to the Employer in writing within ten (10) days from the date of discharge or suspension and/or return to the employee's home terminal, whichever is later.

Should it be proved that an injustice has been done to a discharged or suspended employee, the employee shall be fully reinstated in his or her position and compensated at the employee's usual rate of pay for lost work opportunity. If the Union and the Employer are unable to agree as to the settlement of the case, then it

boiler2001.con

- 7 -

may be referred to the grievance machinery as set forth in Article 7, within fourteen (14) days after the above notice of appeal is given to the Employer.

New employees shall be on probation for the first six (6) months worked. An additional thirty (30) day period of probation shall be given for marginal employees provided the Company first notifies the Union of such request. If discharged during such two months' probationary period, such discharge shall not be subject to challenge nor to the grievance arbitration procedure of the contract.

Employees shall comply with all reasonable rules, regulations and conditions of employment established by the Company. Such work rules may not be inconsistent with the express provisions of this Agreement and shall be submitted to the Union before posting. The Union shall be furnished with a copy of all work rules.

## ARTICLE 9
## PICKET LINES

It shall not be a violation of this Agreement, and it shall not be cause of discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's place of business.

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action if any employee refuses to perform any service which the Employer undertakes to perform as an ally of an Employer or person whose employees are on strike and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 10
## MILITARY CLAUSE

Employees enlisting or entering the military or naval service of the United States pursuant to the provisions of the Universal Military Training and Service Act and amendments thereto shall be granted all rights and privileges provided by the Act.

The Employer shall pay the Health and Welfare Fund and Pension Fund contributions on employees on leave of absence for training in the military reserves or National Guard, but not exceed fourteen (14) days, providing such absence affects the employee's credits or coverage for Health and Welfare and/or Pension.

## ARTICLE 11
## UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his or her acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business, nor shall there be any discrimination against any employee because of Union membership or activities.

## ARTICLE 12
## INSPECTION PRIVILEGES

Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, and ascertaining that the Agreement is being adhered to, provided, however, that there is no interruption of the firm's working schedule.

## ARTICLE 13
## POSTING OF AGREEMENT AND NOTICES

A copy of this Agreement shall be posted in a conspicuous place in each garage, terminal or place of work.

## ARTICLE 14
## SPLIT SHIFTS

There shall be no split shifts.

## ARTICLE 15
## UNIFORMS AND SAFETY EQUIPMENT

The Employer agrees that if any employee is required to wear any kind of uniform or safety equipment as a condition of continued employment, such uniform or safety equipment shall be furnished and maintained by the Employer free of charge, at the standard required by the Employer.

The Employer agrees to furnish each employee a respirator when working on or cleaning a boiler furnace.

boiler2001.con                    - 9 -

# ARTICLE 16
## SANITARY CONDITIONS

The Employer agrees to maintain a clean, sanitary washroom having hot and cold running water and toilet facilities, unless otherwise mutually agreed.

The Employer will provide cool drinking water for employees covered by this Agreement.

The Employer agrees to provide an ice machine for the purpose of providing ice for the employees' water cooler during working hours.

# ARTICLE 17
## FUNERAL LEAVE

In the event of a death in the family (father, mother, wife, husband, brother, sister, son or daughter, mother-in-law, father-in-law, grandparents), a regular employee shall be entitled to a maximum of two (2) days off with pay to attend the funeral. Two (2) days guaranteed regardless of day of death or day of funeral.

# ARTICLE 18
## JURY DUTY PAY

In the event that an employee loses all or part of his or her time on account of jury service, the Employer shall pay such employee an amount sufficient to guarantee no loss in wages on account of such absence from work.  Employees shall notify the Employer within forty-eight (48) hours after they receive jury notice.

# ARTICLE 19
## COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt disposition of employee on-the-job injury claims.  The Employer shall provide worker's compensation protection for all employees even though not required by state law, or the equivalent thereof, if the injury arose out of or in the course of employment.

At the time an injury report is submitted to the Employer, the Employer shall provide the injured employee with an information sheet briefly outlining the procedure for submitting a worker's compensation claim to include the name,

address and telephone number of the company's worker's compensation representative and other pertinent information relative to claim payment.

An employee who is injured on the job and is sent home or to a hospital or who must obtain medical attention shall receive pay at the applicable hourly rate for the balance of the employee's regular shift on that day. An employee who has returned to the his or her regular duties after sustaining a compensable injury and who is required by the worker's compensation doctor to receive additional medical treatment during the employee's regularly scheduled working hours shall receive his or her regular hourly rate of pay for such time.

## ARTICLE 20
## SUPERVISORY PERSONNEL

At no time will any employee with supervisory authority be permitted to perform any work covered by this Agreement.

## ARTICLE 21
## WORKWEEK AND MINIMUM GUARANTEE

The workweek shall consist of five (5) consecutive days, Monday through Friday. The workday shall consist of eight (8) consecutive hours with all time worked on Saturday paid for at the rate of time and one half. Excusable absenteeism shall be considered as time worked for the purpose of computing overtime.

Overtime shall not be used in making up the weekly minimum guarantee for regular employees.

When an employee is requested to do work in a higher-rated classification, the employee shall receive the higher rate of pay for all time in which such work is performed, to be calculated in minimums of one-half (1/2) hour increments. When an employee is requested to work in a lower-rated classification, the employee shall receive his or her regular rate of pay for all such lower-rated work performed. The higher rate of pay is the minimum scale set forth in Article 22 for each classification.

Meal periods shall be taken immediately after completing the fourth (4th) hour of work and shall be of one continuous period consisting of thirty (30) minutes.

# ARTICLE 22
## WAGES AND CLASSIFICATIONS

Wages Effective

| Classification | 10/16/04 | 10/16/05 | 10/16/06 |
|---|---|---|---|
| Helper | $ 9.75 | $ 10.00 | $ 10.25 |
| Driver Boiler Cleaner | $16.35 | $16.90 | $17.45 |
| Driver Mechanic | $16.85 | $17.40 | $17.95 |
| CDL-Qualified Driver | $18.50 | $19.05 | $19.60 |

No employee shall suffer a reduction in rates of wages as a result of the execution of this Agreement, and if any employee is receiving a higher rate, such employee shall receive the same increases as other employees in his or her classification.

The following rate of pay shall apply to newly hired probationary employees, excluding helpers:

(1)    Effective first date of employment 80% of current rate.

(2)    Effective second anniversary date of employment 90% of current rate.

(3)    Effective third anniversary date of employment 100% of current rate.

The Company agrees to post a seniority list with each person in his or her seniority order and classification.

The regular scheduled payday shall be Friday of each week.

# ARTICLE 23
## SENIORITY

The ordinary rules of seniority shall prevail at all times. In the promotion of employees within the unit and in case of increase or decreases of the force within the unit, seniority shall govern, provided that the ordinary rules of fitness for and ability to perform the work shall also be considered. The same seniority principles shall apply with respect to the awarding of overtime, with overtime to be paid on the basis of the employee's usual rate of pay. An employee working on a particular job may continue on that job and earn overtime without regard to seniority.

boiler2001.con

An employee retained in the service beyond ninety (90) working days shall have seniority dating back to the employee's original date of employment.

The seniority of an employee will be considered broken, all rights forfeited, and there shall be no obligation to rehire when such employee:

1. Voluntarily leaves the service of the Company or is discharged for just cause.

2. Fails to return to work within five days after being recalled or cannot be located.

3. Has been out of employment of the Company for a period of twelve (12) months or longer.

Seniority records will be made available to employees or a recognized Union representative upon request.

## ARTICLE 24
## LAYOFF AND RECALL

When it becomes necessary to reduce the working force, the last employee hired shall be laid off first, and when the force is again increased, the employees are to be returned to work in the reverse order in which they were laid off.

In the event of a recall, the laid-off employee shall be given notice of recall by telephone and telegram, registered or certified mail, sent to the address last given the Employer by the employee. Within three (3) calendar days after tender of delivery at such address of the Employer's notice, the employee must notify the Employer by telephone and telegram, registered or certified mail of his or her intent to return to work and must actually report to work within seven (7) calendar days after date of tender of delivery of the recall notice, unless it is mutually agreed that the employee need not return to work within seven (7) calendar days period. In the event the employee fails to comply with the above provisions, the employee shall lose all seniority rights under this Agreement and shall be considered as a voluntary quit.

boiler2001.con

## ARTICLE 25
## HOLIDAYS

In any workweek in which a holiday occurs, thirty-two (32) hours shall constitute a workweek and all regular employees who work such week shall receive forty (40) hours pay for thirty-two (32) hours of work, and all hours worked in excess of thirty-two (32) hours in such week shall be paid for at the rate of time and one-half the regular rate. This provision shall not apply when the holiday is observed on Saturday or Sunday.

The following days with eight (8) hours pay if not worked are agreed to be holidays for the purpose of this Agreement: New Year's Day, Martin Luther King's Birthday, Memorial Day, July Fourth, Labor Day, Veteran's Day, Thanksgiving Day, Day after Thanksgiving Day and Christmas Day.

If a holiday falls on Saturday, it will be celebrated on Friday, and if a holiday falls on Sunday, it will be celebrated on Monday, or the day celebrated by the State and Nation in lieu thereof.

Employees called to work on any of the above listed holidays shall be compensated at the rate of one and one-half (1-1/2) times the regular rate of pay in addition to the eight (8) hours referred to above, for all hours worked on such holidays and such hours shall not be figured in the total hours worked during a holiday week.

To be eligible for holiday pay, as provided for in this Article, an employee must have reported for work on the scheduled workday immediately before and the scheduled workday immediately following the particular holiday unless said employee shall present to the Company a doctor's certificate attesting illness of such a serious nature as to prevent the employee from reporting for work or unless the employee is otherwise excused from working on either of such work days.

If any holiday falls within the thirty (30) day period following an employee's layoff due to lack of work, and such employee is called to work during the same thirty (30) day period but did not receive any holiday pay, then in such case the employee shall receive an extra day's pay for each holiday, in the week in which the employee returns to work.

Any holiday observed during a employee's vacation shall entitle such employee to eight (8) hours' pay at straight time rates or be added to the employee's vacation, at the option of the Employee.

boiler2001.con

- 14 -

Any holiday observed on a employee's regular day off shall entitle such employee to eight (8) hours' pay at straight time rates or an additional day off, at the option of the employee.

None of the above provisions shall result in a duplication of holiday payments.

On October 16 of each calendar year, regular employees will receive one (1) personal leave day to be used in the contract year. Such leave must be requested in writing to the employee's supervisor at least one week in advance. Approval of the day shall be at the discretion of management based upon the operational needs of the company. An emergency personal day may be granted without notice with the permission of the company. Employees may elect to receive eight (8) hours straight time pay in lieu of taking a personal holiday.

## ARTICLE 26
## VACATIONS

All employees covered by this Agreement who have been in the service of the Employer for a period of one (1) year from the date of their employment shall receive one (1) full workweek's vacation with pay during each calendar year. After an employee has been in the service of the Employer for a period of two (2) years from the date of his or her employment, the employee shall receive two (2) full workweek's vacation with pay during each calendar year.

After an employee has been in the service of the Employer for a period of ten (10) years from the date of his or her employment, the employee shall receive three (3) full workweeks' vacation with pay during each calendar year.

Whenever a holiday occurs during an employee's vacation period, the employee shall be entitled to eight (8) hours' pay at straight time rates or have the day added to his or her vacation, at the option of the Company.

To be entitled to a vacation, an employee must have worked for the Employer at least 140 days in the twelve (12) month period preceding the date on which the employee becomes eligible for a vacation. Paid holidays and vacation days shall be counted as days worked. Whenever an employee suffers an injury during the course of employment, as a result of which the employee receives Workmen's Compensation benefits, the time lost from work by such an employee as a result of such injury shall be considered as time worked under the 140-day vacation

requirement specified in this Section, applicable only for the qualifying year in which such injury occurs or in the year in which it recurs. When an employee has been in the employ of a Company more than one (1) year and entitled to more than one (1) week's vacation, if the employee has worked six (6) months past his or her anniversary date, and a minimum of seventy (70) days, the employee shall be entitled to a portion of his or her vacation.

The Employer shall determine the number of employees on vacation at any given time, consistent with efficient operations. All employees shall be given vacation pay previous to the date of beginning a vacation, if so requested by the employees, with at least a week's notice.

Any employee who has been in the service of the Employer for a period of one (1) year or more and who resigns or is laid off shall be entitled to vacation pay in an amount equal to one twelfth (1/12th) of the vacation pay to which the employee is eligible under the provisions of this Agreement, for each full month of service completed by such employee since the employee's most recent anniversary date of employment. This provision shall not apply in the case of discharge.

Employees who have completed one (1) year of service but less than two (2) years of service shall be entitled to compensation hereunder on the basis of one (1) week's vacation pay and employees who have completed two (2) years or more of service shall be entitled to compensation hereunder on the basis of two (2) week's vacation pay. Employees who have completed ten (10) years or more of service shall be entitled to compensation hereunder on the basis of three (3) week's vacation pay. Employees will receive forty (40) hours' pay computed at their regular hourly rate.

Each employee shall select his or her vacation weeks in order of seniority of service with the Company, provided that in each case the needs of the Company shall be paramount as to any vacation selection and the Company may set limits on the number of employees on vacation at any given time; however, a minimum of fifteen percent (15%) of the total number of employees covered by this Agreement shall be permitted to go on vacation between May 1st and October 1st each year.

Vacations are not cumulative or retroactive. Employees entitled to vacations will not be allowed to take money in lieu thereof.

## ARTICLE 27
## EMPLOYER HEALTH TRUST

Commencing with the 16th day of October, 2004, and for the duration of this Agreement, and any renewals or extensions of this Agreement, the Company agrees to make payments to the Teamsters Local 639-Employers Health Trust for each employee covered by this Agreement as follows:

(a)    Effective October 16, 2004, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution of Three Dollars and Thirty-Two Cents ($3.32) to the above-named Trust.

Effective October 16, 2005, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution of Three Dollars Fifty-Two Cents ($3.52) to the above-named Trust.

Effective October 16, 2006, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution yet undetermined (Open)) to the above-named Trust.

(b)    Contributions shall be paid on behalf of any employee, after completion of the probationary period of ninety (90) consecutive working days starting with the employee's first day of employment in a job classification covered by this Agreement. (Refer to Article 5.)

(c)    The payments to the Health Trust required above shall be made to the "Teamsters Local 639-Employers Health Trust". The Company hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though it had actually signed the same.

The Company hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Company further agrees to be bound by all actions taken by the Trustees within the scope of their authority pursuant to the said Agreement and Declaration of Trust.

All contributions shall be made in such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent accountant audit the payroll and wage records of the Company for the purpose of determining

the accuracy of contributions to the Health Trust. A copy of any such audit shall be provided to the Company.

The Health Plan adopted by the Trustees of said Health Trust shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Company at all times to treat contributions to the Health Trust as a deduction for income tax purposes. The Plan and Trust shall also comply with the requirements of any and all other applicable state and/or federal laws.

The parties hereto agree that should the Company be required by any law of the United States, or by the District of Columbia, or by any other political subdivision of the United States, to pay premiums or taxes or make other similar payments to provide any so-called health or welfare benefits, then all such premiums, taxes or other payments shall be deducted from the contributions to the fund provided for herein.

By the execution of this Agreement, the Employer signatory to this contract agrees to execute the current Trust Agreement with the Trustees of the Teamsters Local 639-Employers Health Trust. The signatory Employer hereby waives all notice thereof and ratifies all actions already taken or to be taken by such Trustees within the scope of their authority.

## ARTICLE 28
## EMPLOYER PENSION TRUST

Commencing with the 16th day of October, 2004, the Employer agrees to make payments to the Teamsters Local 639-Employers Pension Trust for each employee covered by this Agreement, as follows:

(a)     For each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of Two Dollars and Seventy-Six Cents ($2.76) to the above-named Trust.

Effective October 16, 2005, for each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of Three Dollars and Eleven Cents ($3.11) to the above-named Trust.

Effective October 16, 2006, for each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of Three Dollars and Forty-Six Cents ($3.46) to the above-named Trust.

(b)    Contributions shall be paid on behalf of any employee after completion of probation period of ninety (90) consecutive working days starting with the employee's first day of employment in a job classification covered by this Agreement. (Refer to Article 5.)

(c)    The payments to the Pension Trust required above shall be made to the "Teamsters Local 639-Employers Pension Trust". The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though it had actually signed the same.

The Company hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees within the scope of their authority pursuant to the said Agreement and Declaration of Trust.

All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Trust. A copy of any such audit shall be provided to the Company.

The Pension Plan adopted by the Trustees of said Pension Trust shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Company at all times to treat contributions to the Pension Trust as a deduction for income tax purposes. The Plan and Trust shall also comply with the requirements of any and all other applicable state and/or federal laws.

By the execution of this Agreement, the Employer signatory to this contract agrees to execute the current Trust Agreement with the Trustees of the Teamsters Local 639-Employers Pension Trust. The signatory Employer hereby waives all notice thereof and ratifies all actions already taken or to be taken by such Trustees within the scope of their authority.

## ARTICLE 29
## NON-DISCRIMINATION CLAUSE

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation and other terms and conditions of employment because of such individual's race, color, religion, gender, national origin or age (between the years of 40 and 70), nor will they limit, segregate or classify employees in any way to deprive any individual employment opportunities because of race, color, religion, gender, national origin or age (between the years of 40 and 70).

Whenever any words are used in this Agreement in the masculine gender, they shall be construed as though they were also used in the feminine gender.

## ARTICLE 30
## SEPARATION OF EMPLOYMENT

Upon quitting, the Employer shall pay all money due to the employee including vacation pay on the payday in the week following such quitting.

## ARTICLE 31
## SAVINGS CLAUSE

To the best knowledge and belief of the parties, this Agreement now contains no provision that is contrary to Federal or other law. If, however, any provision of this Agreement is held contrary to any local or Federal law by a court of competent jurisdiction, then either party shall have the right to open this Agreement on those matters found in conflict with the law. All remaining provisions of the Agreement shall continue in full force and effect during the full term thereof.

## ARTICLE 32
## MISCELLANEOUS

Any employee who agrees to work Saturday or Sunday overtime but does not report for such overtime work shall be eliminated from being asked to work Saturday or Sunday overtime for a period of four (4) months unless the employee is excused from working such overtime.

The Company will notify the Union when new employees are to be hired, and if the Union has qualified applicants available, they may be referred to the Company for its consideration.

The Employer will provide raincoats and first-aid kits for the employees. Employees shall not be charged for loss of such items unless clear proof of negligence is shown.

## ARTICLE 33
## CREDIT UNION CHECK-OFF

The Employer agrees to deduct certain specific amounts each week from the wages of those employees who shall have given the Employer written authorization to make such deductions. The amounts so deducted shall be remitted to Money One Federal Credit Union once each month. The Employer shall not make deductions and shall not be responsible for remittance to the Credit Union for any deductions for those weeks in which the employee's earnings shall be less than the amount authorized for deductions.

## ARTICLE 34
## TERM

THIS AGREEMENT shall become effective on October 16, 2004, and shall remain in full force and effect up to and including October 15, 2007, and thereafter shall become automatically renewed for successive periods of one year each, provided, however, that either party may open this Agreement for amendment in whole or in part upon notice in writing not less than sixty (60) days prior to October 15, 2004 or October 15th of any year thereafter. All increases will be retroactive from October 16, 2004 until contract is ratified.

**FOR THE UNION**

_Signature_

_Business Agent_
**Title**
_15 Jan 05_
**Date**

**FOR THE COMPANY**

_Signature_

_TREASURER_
**Title**
_6/4/05_
**Date**

boiler2001.con

- 21 -

# EXHIBIT D

# COLLECTIVE BARGAINING AGREEMENT

**By and Between**

## BOILER AND FURNACE CLEANERS, INC.

**and**

## DRIVERS, CHAUFFEURS AND HELPERS
## LOCAL UNION #639
### Affiliated with the
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

**Term of Agreement**

**October 16, 2001**
**to**
**October 15, 2004**

# A G R E E M E N T

This Agreement is made and entered into this 16th day of October, 2001 by and between **BOILER AND FURNACE CLEANERS, INC.** (hereinafter referred to as the "Company") and the **DRIVERS, CHAUFFEURS AND HELPERS LOCAL UNION #639**, affiliated with the **INTERNATIONAL BROTHERHOOD OF TEAMSTERS** (hereinafter referred to as the "Union").

**WITNESSETH:**   That for and in consideration of the mutual promises herein made, one party to the other, the parties agree as follows:

## ARTICLE 1
## RECOGNITION

The Employer recognizes and acknowledges that the Local Union is the sole and exclusive representative of all employees in the classifications of work covered by this Agreement for the purposes of collective bargaining as provided by the National Labor Relations Act.

## ARTICLE 2
## SUBCONTRACTING

For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that no work or services of this kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or non-unit employees, unless other wise provided in this Agreement.

boiler2001.con                                    - 1 -

However, it is understood that work more than 75 miles from the Hyattsville yard may be performed by persons outside of the bargaining unit, provided such work is first offered to employees covered by this Agreement.

## ARTICLE 3
## TRANSFER OF COMPANY TITLE OR INTEREST

This Agreement shall be binding upon the parties hereto, their successors, adminis-trators, executors and assigns. In the event an entire operation or any part thereof is sold, leased, transferred, or taken over by sale, transfer, lease assignment, receiver-ship or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof.

It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this contract.

The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union at the time the seller, transferor or lessor executes a contract of transaction as herein described.

In the event the Employer fails to give the notice herein required and/or fails to require the purchaser, transferee, or lessee to assume the obligations of this contract, the Employer shall be liable to the Union and to the employees covered for all assumption of the terms of the contract.

## ARTICLE 4
## UNION SECURITY

All present employees who are members of the Union on the effective date of this subsection or on the date of execution of this Agreement, whichever is later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of employment on and after the 31st day following the beginning of their employment or on and after the 31st day following the effective date of this subsec-tion or the execution date of this Agreement, whichever is the later.

boiler2001.con                                   - 2 -

This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

The failure of any person to become a member of the Union at the required time shall obligate the Employer, upon written notice to the Employer by the Union to such effect, to discharge such person.

In the event of any change in the law during the term of this Agreement, the Employer agrees that the Union will be entitled to receive the maximum Union security that may be lawfully permissible.

No provision of this Article shall apply in any state to the extent that it may be prohibited by state law. If under applicable state law additional requirements must be met before any such provision may become effective, such additional requirements shall first be met.

If any provision of this Article is invalid under the law of any state wherein this Agreement is executed, such provision shall be modified to comply with the requirements of state law and shall be renegotiated for the purpose of adequate replacement. If such negotiations shall not result in a mutually satisfactory agreement, the Union shall be permitted all legal and economic recourse.

## ARTICLE 5
## CHECK-OFF

The Employer agrees to deduct from the pay of all regular employees covered by this Agreement the dues, initiation fees, and/or uniform assessments of the Union and agrees to remit to the Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employee, the same is to be furnished in the form required. No deduction shall be made which is prohibited by applicable law.

A probationary period of ninety (90) consecutive working days shall apply in the case of each newly-hired employee during which the employee may be terminated for any reason without reference to seniority and grievance provision of this Agreement, and there shall be no obligation to rehire such employee under any circumstances.

# ARTICLE 6
# JOB STEWARDS

The Employer recognizes the right of the Union to designate job stewards and alternates. The authority of job stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties and activities:

1.  The investigation and presentation of grievances in accordance with the provisions of the Collective Bargaining Agreement;

2.  The collection of dues when authorized by appropriate legal Union action; and

3.  The transmission of such messages and information which shall originate with and are authorized by the Local Union or its officers, provided such messages and information:

    (a)    have been reduced in writing, or

    (b)    if not reduced to writing, are of a routine nature and do not involve work stoppage, slowdowns, refusal to handle goods, or any other interference with the Employer's business.

Stewards shall be permitted to investigate, present and process grievances on or of the property of the Employer, without loss of time or pay. Such time spent in handling grievances shall be considered working hours in computing daily and/or weekly overtime.

In instances of layoff and recall, the steward(s) shall be the last employee(s) to be laid off and the first employee(s) to be recalled. For the purposes of this provision, "Layoff" is defined to include any instance, no matter how short its duration, where, because of lack of work, one or more employees do not work. This means that if any employee works, the steward(s) shall work.

The purpose of this provision is to assure that whenever the Employer is operating, the steward(s) will be on the job to administer this Collective Bargaining Agreement.

boiler2001.con                          - 4 -

Job stewards and alternates have no authority to take strike action or any other action interrupting the Employer's business, except as authorized by official action of the Union.

The Employer recognizes these limitations upon the authority of job stewards and their alternates and shall not hold the Union liable for any unauthorized acts. The Employer in so recognizing such limitations shall have the authority to impose proper discipline including discharge, in the event the shop steward has taken unauthorized strike action, slowdown or work stoppage in violation of the Agreement.

## ARTICLE 7
## GRIEVANCE PROCEDURE

A grievance is hereby jointly defined to be any controversy, complaint, misunder-standing or dispute.

Any grievance arising between the Company and the Union or an employee repre-sented by the Union shall be settled in the following manner:

Step 1

The aggrieved employee or employees must present the grievance to the Shop Steward within five (5) working days after knowledge of the grievance or the reason for the grievance has occurred, except no time limit shall apply in case of violation of wage provisions of this Agreement. If a satisfactory settlement is not effected with the fore-man within three (3) working days, the Shop Steward and employee shall submit such grievance in writing to the Union's Business Representative.

Step 2

The Business Representative shall then take the matter up with a representative of the Company with authority to act upon such griev-ance. A decision must be made within five (5) working days.

<u>Step 3</u>

If the Company fails to comply with any settlement of the grievance or fails to comply with the procedures of this Article, the Union has the right to take all legal and economic action to enforce its demands.

Any Shop Steward shall be permitted to leave his or her work to investigate and adjust the grievance of any employee within the steward's jurisdiction, after notification to his or her Supervisor. Employees shall have the Shop Steward or a representative of the Union present during the discussion of any grievance with representatives of the Company.

If no satisfactory settlement can be agreed upon, the parties shall select a mutually agreeable and impartial Arbitrator within fourteen (14) days after disagreement. In the event they are unable to agree, the matter shall be referred to the Federal Mediation and Conciliation Service the next day. After the Service submits a list of arbitrators to the Union and the Company, they shall reply with their preferred selections no later than three (3) days after receipt of such list. The expense of the Arbitrator selected or appointed shall be borne equally by the Company and the Union.

The Arbitrator shall not have the authority to amend or modify this Agreement or establish new terms or conditions under arbitrability. In the event the position of the Union is sustained, the aggrieved party shall be entitled to all the benefits of this Agreement which would have accrued to him or her had there been no grievance.

A mutual settlement of the grievance pursuant to the procedures set forth herein and/or a decision of the Arbitrator will be final and binding on all parties and the employees involved. If the Company fails to comply with the award of the Arbitrator or with the procedures of this Article, the Union has a right to take all legal and economic action to enforce compliance.

Notwithstanding anything herein contained, it is agreed that in the event the Employer is delinquent at the end of a period in the payment of its contribution to the Health and Welfare Fund and/or Pension Fund created under the Agreement, in accordance with the rules and regulations of the Trustees of such funds, after the proper official of the Local Union has given seventy-two (72) hours' notice to the Employer of such employees in Health and Welfare and/or Pension payments, the employees or their representatives shall have the right to take such action as may be

necessary until such delinquent payments are made, and it is further agreed that in the event such action is taken, the Employer shall be responsible to the employees for losses resulting therefrom.

The Local Union, or its authorized representative, shall have the right to examine time sheets and any other records pertaining to the computation of compensation of any individual or individuals whose pay is in dispute or records pertaining to a specific grievance.

The procedures set forth herein may be invoked only by any authorized representative of the Employer and the Union.

## ARTICLE 8
## DISCHARGE OR SUSPENSION

The Employer shall not discharge or suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) written warning notice of the complaint against such employee to the employee and to the employee's Local Union, except that no warning notice need be given to an employee before being discharged for a major offense such as dishonesty, drunkenness, recklessness resulting in a serious accident while on duty or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for the period of more than nine months from date of said warning notice. Discharge must be by proper written notice to the employee and Local Union affected. Any employee discharged must be paid in full upon discharge for all wages owed to the employee by the Employer, including earned vacation pay.

A discharged or suspended employee must advise the Local Union in writing, within five (5) working days after receiving notification of such action against him, of his desire to appeal the discharge or suspension. Notice of appeal from discharge or suspension must be made to the Employer in writing within ten (10) days from the date of discharge or suspension and/or return to the employee's home terminal, whichever is later.

Should it be proved that an injustice has been done to a discharged or suspended employee, the employee shall be fully reinstated in his or her position and compensated at the employee's usual rate of pay for lost work opportunity. If the Union and the Employer are unable to agree as to the settlement of the case, then it

may be referred to the grievance machinery as set forth in Article 7, within fourteen (14) days after the above notice of appeal is given to the Employer.

New employees shall be on probation for the first six (6) months worked. An additional thirty (30) day period of probation shall be given for marginal employees provided the Company first notifies the Union of such request. If discharged during such two months' probationary period, such discharge shall not be subject to challenge nor to the grievance arbitration procedure of the contract.

Employees shall comply with all reasonable rules, regulations and conditions of employment established by the Company. Such work rules may not be inconsistent with the express provisions of this Agreement and shall be submitted to the Union before posting. The Union shall be furnished with a copy of all work rules.

## ARTICLE 9
## PICKET LINES

It shall not be a violation of this Agreement, and it shall not be cause of discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a primary labor dispute, or refuses to go through or work behind any primary picket line, including the primary picket line of Unions party to this Agreement, and including primary picket lines at the Employer's place of business.

It shall not be a violation of this Agreement and it shall not be a cause for discharge or disciplinary action if any employee refuses to perform any service which the Employer undertakes to perform as an ally of an Employer or person whose employees are on strike and which service, but for such strikes, would be performed by the employees of the Employer or person on strike.

## ARTICLE 10
## MILITARY CLAUSE

Employees enlisting or entering the military or naval service of the United States pursuant to the provisions of the Universal Military Training and Service Act and amendments thereto shall be granted all rights and privileges provided by the Act.

The Employer shall pay the Health and Welfare Fund and Pension Fund contributions on employees on leave of absence for training in the military reserves or National Guard, but not exceed fourteen (14) days, providing such absence affects the employee's credits or coverage for Health and Welfare and/or Pension.

## ARTICLE 11
## UNION ACTIVITIES

Any employee member of the Union acting in any official capacity whatsoever shall not be discriminated against for his or her acts as such officer of the Union so long as such acts do not interfere with the conduct of the Employer's business, nor shall there be any discrimination against any employee because of Union membership or activities.

## ARTICLE 12
## INSPECTION PRIVILEGES

Authorized agents of the Union shall have access to the Employer's establishment during working hours for the purpose of adjusting disputes, investigating working conditions, collection of dues, and ascertaining that the Agreement is being adhered to, provided, however, that there is no interruption of the firm's working schedule.

## ARTICLE 13
## POSTING OF AGREEMENT AND NOTICES

A copy of this Agreement shall be posted in a conspicuous place in each garage, terminal or place of work.

## ARTICLE 14
## SPLIT SHIFTS

There shall be no split shifts.

## ARTICLE 15
## UNIFORMS AND SAFETY EQUIPMENT

The Employer agrees that if any employee is required to wear any kind of uniform or safety equipment as a condition of continued employment, such uniform or safety equipment shall be furnished and maintained by the Employer free of charge, at the standard required by the Employer.

The Employer agrees to furnish each employee a respirator when working on or cleaning a boiler furnace.

boiler2001.con                          - 9 -

# ARTICLE 16
## SANITARY CONDITIONS

The Employer agrees to maintain a clean, sanitary washroom having hot and cold running water and toilet facilities, unless otherwise mutually agreed.

The Employer will provide cool drinking water for employees covered by this Agreement.

The Employer agrees to provide an ice machine for the purpose of providing ice for the employees' water cooler during working hours.

# ARTICLE 17
## FUNERAL LEAVE

In the event of a death in the family (father, mother, wife, husband, brother, sister, son or daughter, mother-in-law, father-in-law, grandparents), a regular employee shall be entitled to a maximum of two (2) days off with pay to attend the funeral. Two (2) days guaranteed regardless of day of death or day of funeral.

# ARTICLE 18
## JURY DUTY PAY

In the event that an employee loses all or part of his or her time on account of jury service, the Employer shall pay such employee an amount sufficient to guarantee no loss in wages on account of such absence from work. Employees shall notify the Employer within forty-eight (48) hours after they receive jury notice.

# ARTICLE 19
## COMPENSATION CLAIMS

The Employer agrees to cooperate toward the prompt disposition of employee on-the-job injury claims. The Employer shall provide worker's compensation protection for all employees even though not required by state law, or the equivalent thereof, if the injury arose out of or in the course of employment.

At the time an injury report is submitted to the Employer, the Employer shall provide the injured employee with an information sheet briefly outlining the procedure for submitting a worker's compensation claim to include the name,

address and telephone number of the company's worker's compensation representative and other pertinent information relative to claim payment.

An employee who is injured on the job and is sent home or to a hospital or who must obtain medical attention shall receive pay at the applicable hourly rate for the balance of the employee's regular shift on that day. An employee who has returned to the his or her regular duties after sustaining a compensable injury and who is required by the worker's compensation doctor to receive additional medical treatment during the employee's regularly scheduled working hours shall receive his or her regular hourly rate of pay for such time.

## ARTICLE 20
## SUPERVISORY PERSONNEL

At no time will any employee with supervisory authority be permitted to perform any work covered by this Agreement.

## ARTICLE 21
## WORKWEEK AND MINIMUM GUARANTEE

The workweek shall consist of five (5) consecutive days, Monday through Friday. The workday shall consist of eight (8) consecutive hours with all time worked on Saturday paid for at the rate of time and one half. Excusable absenteeism shall be considered as time worked for the purpose of computing overtime.

Overtime shall not be used in making up the weekly minimum guarantee for regular employees.

When an employee is requested to do work in a higher-rated classification, the employee shall receive the higher rate of pay for all time in which such work is performed, to be calculated in minimums of one-half (1/2) hour increments. When an employee is requested to work in a lower-rated classification, the employee shall receive his or her regular rate of pay for all such lower-rated work performed. The higher rate of pay is the minimum scale set forth in Article 22 for each classification.

Meal periods shall be taken immediately after completing the fourth (4th) hour of work and shall be of one continuous period consisting of thirty (30) minutes.

## ARTICLE 22
## WAGES AND CLASSIFICATIONS

Wages Effective

| Classification | 10/16/01 | 1016/02 | 10/16/03 |
|---|---|---|---|
| Helper | $ 9.25 | $ 9.25 | $ 9.25 |
| Driver Boiler Cleaner | $14.60 | $15.20 | $15.80 |
| Driver Mechanic | $15.10 | $15.70 | $16.30 |
| CDL-Qualified Driver | $16.75 | $17.35 | $17.95 |

No employee shall suffer a reduction in rates of wages as a result of the execution of this Agreement, and if any employee is receiving a higher rate, such employee shall receive the same increases as other employees in his or her classification.

The following rate of pay shall apply to newly hired probationary employees, excluding helpers:

(1)    Effective first date of employment 80% of current rate.

(2)    Effective second anniversary date of employment 90% of current rate.

(3)    Effective third anniversary date of employment 100% of current rate.

The Company agrees to post a seniority list with each person in his or her seniority order and classification.

The regular scheduled payday shall be Friday of each week.

## ARTICLE 23
## SENIORITY

The ordinary rules of seniority shall prevail at all times.  In the promotion of employees within the unit and in case of increase or decreases of the force within the unit, seniority shall govern, provided that the ordinary rules of fitness for and ability to perform the work shall also be considered.  The same seniority principles shall apply with respect to the awarding of overtime, with overtime to be paid on the basis of the employee's usual rate of pay.  An employee working on a particular job may continue on that job and earn overtime without regard to seniority.

An employee retained in the service beyond ninety (90) working days shall have seniority dating back to the employee's original date of employment.

The seniority of an employee will be considered broken, all rights forfeited, and there shall be no obligation to rehire when such employee:

1.  Voluntarily leaves the service of the Company or is discharged for just cause.

2.  Fails to return to work within five days after being recalled or cannot be located.

3.  Has been out of employment of the Company for a period of twelve (12) months or longer.

Seniority records will be made available to employees or a recognized Union representative upon request.

## ARTICLE 24
## LAYOFF AND RECALL

When it becomes necessary to reduce the working force, the last employee hired shall be laid off first, and when the force is again increased, the employees are to be returned to work in the reverse order in which they were laid off.

In the event of a recall, the laid-off employee shall be given notice of recall by telephone and telegram, registered or certified mail, sent to the address last given the Employer by the employee. Within three (3) calendar days after tender of delivery at such address of the Employer's notice, the employee must notify the Employer by telephone and telegram, registered or certified mail of his or her intent to return to work and must actually report to work within seven (7) calendar days after date of tender of delivery of the recall notice, unless it is mutually agreed that the employee need not return to work within seven (7) calendar days period. In the event the employee fails to comply with the above provisions, the employee shall lose all seniority rights under this Agreement and shall be considered as a voluntary quit.

## ARTICLE 25
## HOLIDAYS

In any workweek in which a holiday occurs, thirty-two (32) hours shall constitute a workweek and all regular employees who work such week shall receive forty (40) hours pay for thirty-two (32) hours of work, and all hours worked in excess of thirty-two (32) hours in such week shall be paid for at the rate of time and one-half the regular rate. This provision shall not apply when the holiday is observed on Saturday or Sunday.

The following days with eight (8) hours pay if not worked are agreed to be holidays for the purpose of this Agreement: New Year's Day, Washington's Birthday, Memorial Day, July Fourth, Labor Day, Thanksgiving Day, Day after Thanksgiving Day and Christmas Day.

If a holiday falls on Saturday, it will be celebrated on Friday, and if a holiday falls on Sunday, it will be celebrated on Monday, or the day celebrated by the State and Nation in lieu thereof.

Employees called to work on any of the above listed holidays shall be compensated at the rate of one and one-half (1-1/2) times the regular rate of pay in addition to the eight (8) hours referred to above, for all hours worked on such holidays and such hours shall not be figured in the total hours worked during a holiday week.

To be eligible for holiday pay, as provided for in this Article, an employee must have reported for work on the scheduled workday immediately before and the scheduled workday immediately following the particular holiday unless said employee shall present to the Company a doctor's certificate attesting illness of such a serious nature as to prevent the employee from reporting for work or unless the employee is otherwise excused from working on either of such work days.

If any holiday falls within the thirty (30) day period following an employee's layoff due to lack of work, and such employee is called to work during the same thirty (30) day period but did not receive any holiday pay, then in such case the employee shall receive an extra day's pay for each holiday, in the week in which the employee returns to work.

Any holiday observed during a employee's vacation shall entitle such employee to eight (8) hours' pay at straight time rates or be added to the employee's vacation, at the option of the Employee.

boiler2001.con                          - 14 -

Any holiday observed on a employee's regular day off shall entitle such employee to eight (8) hours' pay at straight time rates or an additional day off, at the option of the employee.

None of the above provisions shall result in a duplication of holiday payments.

On October 16 of each calendar year, regular employees will receive one (1) personal leave day to be used in the contract year. Such leave must be requested in writing to the employee's supervisor at least one week in advance. Approval of the day shall be at the discretion of management based upon the operational needs of the company. An emergency personal day may be granted without notice with the permission of the company. Employees may elect to receive eight (8) hours straight time pay in lieu of taking a personal holiday.

## ARTICLE 26
## VACATIONS

All employees covered by this Agreement who have been in the service of the Employer for a period of one (1) year from the date of their employment shall receive one (1) full workweek's vacation with pay during each calendar year. After an employee has been in the service of the Employer for a period of two (2) years from the date of his or her employment, the employee shall receive two (2) full workweek's vacation with pay during each calendar year.

After an employee has been in the service of the Employer for a period of ten (10) years from the date of his or her employment, the employee shall receive three (3) full workweeks' vacation with pay during each calendar year.

Whenever a holiday occurs during an employee's vacation period, the employee shall be entitled to eight (8) hours' pay at straight time rates or have the day added to his or her vacation, at the option of the Company.

To be entitled to a vacation, an employee must have worked for the Employer at least 140 days in the twelve (12) month period preceding the date on which the employee becomes eligible for a vacation. Paid holidays and vacation days shall be counted as days worked. Whenever an employee suffers an injury during the course of employment, as a result of which the employee receives Workmen's Compensation benefits, the time lost from work by such an employee as a result of such injury shall be considered as time worked under the 140-day vacation

requirement specified in this Section, applicable only for the qualifying year in which such injury occurs or in the year in which it recurs. When an employee has been in the employ of a Company more than one (1) year and entitled to more than one (1) week's vacation, if the employee has worked six (6) months past his or her anniversary date, and a minimum of seventy (70) days, the employee shall be entitled to a portion of his or her vacation.

The Employer shall determine the number of employees on vacation at any given time, consistent with efficient operations. All employees shall be given vacation pay previous to the date of beginning a vacation, if so requested by the employees, with at least a week's notice.

Any employee who has been in the service of the Employer for a period of one (1) year or more and who resigns or is laid off shall be entitled to vacation pay in an amount equal to one twelfth (1/12th) of the vacation pay to which the employee is eligible under the provisions of this Agreement, for each full month of service completed by such employee since the employee's most recent anniversary date of employment. This provision shall not apply in the case of discharge.

Employees who have completed one (1) year of service but less than two (2) years of service shall be entitled to compensation hereunder on the basis of one (1) week's vacation pay and employees who have completed two (2) years or more of service shall be entitled to compensation hereunder on the basis of two (2) week's vacation pay. Employees who have completed ten (10) years or more of service shall be entitled to compensation hereunder on the basis of three (3) week's vacation pay. Employees will receive forty (40) hours' pay computed at their regular hourly rate.

Each employee shall select his or her vacation weeks in order of seniority of service with the Company, provided that in each case the needs of the Company shall be paramount as to any vacation selection and the Company may set limits on the number of employees on vacation at any given time; however, a minimum of fifteen percent (15%) of the total number of employees covered by this Agreement shall be permitted to go on vacation between May 1st and October 1st each year.

Vacations are not cumulative or retroactive. Employees entitled to vacations will not be allowed to take money in lieu thereof.

## ARTICLE 27
## EMPLOYER HEALTH TRUST

Commencing with the 16th day of October, 2001, and for the duration of this Agreement, and any renewals or extensions of this Agreement, the Company agrees to make payments to the Teamsters Local 639-Employers Health Trust for each employee covered by this Agreement as follows:

(a)    Effective October 16, 2001, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution of Three Dollars and Two Cents ($3.02) to the above-named Trust.

Effective October 16, 2002, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution of Three Dollars and Two Cents ($3.02) to the above-named Trust.

Effective October 16, 2003, for each hour or portion thereof for which an employee actually performs work, the Company shall make a contribution of Three Dollars and Seventeen Cents ($3.17) to the above-named Trust.

(b)    Contributions shall be paid on behalf of any employee, after completion of the probationary period of ninety (90) consecutive working days starting with the employee's first day of employment in a job classification covered by this Agreement. (Refer to Article 5.)

(c)    The payments to the Health Trust required above shall be made to the "Teamsters Local 639-Employers Health Trust". The Company hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though it had actually signed the same.

The Company hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Company further agrees to be bound by all actions taken by the Trustees within the scope of their authority pursuant to the said Agreement and Declaration of Trust.

All contributions shall be made in such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent accountant audit the payroll and wage records of the Company for the purpose of determining

the accuracy of contributions to the Health Trust. A copy of any such audit shall be provided to the Company.

The Health Plan adopted by the Trustees of said Health Trust shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Company at all times to treat contributions to the Health Trust as a deduction for income tax purposes. The Plan and Trust shall also comply with the requirements of any and all other applicable state and/or federal laws.

The parties hereto agree that should the Company be required by any law of the United States, or by the District of Columbia, or by any other political subdivision of the United States, to pay premiums or taxes or make other similar payments to provide any so-called health or welfare benefits, then all such premiums, taxes or other payments shall be deducted from the contributions to the fund provided for herein.

By the execution of this Agreement, the Employer signatory to this contract agrees to execute the current Trust Agreement with the Trustees of the Teamsters Local 639-Employers Health Trust. The signatory Employer hereby waives all notice thereof and ratifies all actions already taken or to be taken by such Trustees within the scope of their authority.

## ARTICLE 28
## EMPLOYER PENSION TRUST

Commencing with the 16th day of October, 2001, the Employer agrees to make payments to the Teamsters Local 639-Employers Pension Trust for each employee covered by this Agreement, as follows:

(a)    For each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of One Dollar and Fifty Cents ($1.50) to the above-named Trust.

Effective October 16, 2002, for each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of One Dollar and Ninety-five Cents ($1.95) to the above-named Trust.

Effective October 16, 2003, for each hour or portion thereof, up to forty (40) hours per week, for which an employee actually performs work, the Employer shall make a contribution of Two Dollars and Forty-one Cents ($2.41) to the above-named Trust.

(b)    Contributions shall be paid on behalf of any employee after completion of probation period of ninety (90) consecutive working days starting with the employee's first day of employment in a job classification covered by this Agreement. (Refer to Article 5.)

(c)    The payments to the Pension Trust required above shall be made to the "Teamsters Local 639-Employers Pension Trust". The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust as though it had actually signed the same.

The Company hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees within the scope of their authority pursuant to the said Agreement and Declaration of Trust.

All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an independent accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Trust. A copy of any such audit shall be provided to the Company.

The Pension Plan adopted by the Trustees of said Pension Trust shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Company at all times to treat contributions to the Pension Trust as a deduction for income tax purposes. The Plan and Trust shall also comply with the requirements of any and all other applicable state and/or federal laws.

By the execution of this Agreement, the Employer signatory to this contract agrees to execute the current Trust Agreement with the Trustees of the Teamsters Local 639-Employers Pension Trust. The signatory Employer hereby waives all notice thereof and ratifies all actions already taken or to be taken by such Trustees within the scope of their authority.

## ARTICLE 29
## NON-DISCRIMINATION CLAUSE

The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation and other terms and conditions of employment because of such individual's race, color, religion, gender, national origin or age (between the years of 40 and 70), nor will they limit, segregate or classify employees in any way to deprive any individual employment opportunities because of race, color, religion, gender, national origin or age (between the years of 40 and 70).

Whenever any words are used in this Agreement in the masculine gender, they shall be construed as though they were also used in the feminine gender.

## ARTICLE 30
## SEPARATION OF EMPLOYMENT

Upon quitting, the Employer shall pay all money due to the employee including vacation pay on the payday in the week following such quitting.

## ARTICLE 31
## SAVINGS CLAUSE

To the best knowledge and belief of the parties, this Agreement now contains no provision that is contrary to Federal or other law.  If, however, any provision of this Agreement is held contrary to any local or Federal law by a court of competent jurisdiction, then either party shall have the right to open this Agreement on those matters found in conflict with the law.  All remaining provisions of the Agreement shall continue in full force and effect during the full term thereof.

## ARTICLE 32
## MISCELLANEOUS

Any employee who agrees to work Saturday or Sunday overtime but does not report for such overtime work shall be eliminated from being asked to work Saturday or Sunday overtime for a period of four (4) months unless the employee is excused from working such overtime.

The Company will notify the Union when new employees are to be hired, and if the Union has qualified applicants available, they may be referred to the Company for its consideration.

The Employer will provide raincoats and first-aid kits for the employees. Employees shall not be charged for loss of such items unless clear proof of negligence is shown.

## ARTICLE 33
## CREDIT UNION CHECK-OFF

The Employer agrees to deduct certain specific amounts each week from the wages of those employees who shall have given the Employer written authorization to make such deductions. The amounts so deducted shall be remitted to Money One Federal Credit Union once each month. The Employer shall not make deductions and shall not be responsible for remittance to the Credit Union for any deductions for those weeks in which the employee's earnings shall be less than the amount authorized for deductions.

## ARTICLE 34
## TERM

THIS AGREEMENT shall become effective on October 16, 2001, and shall remain in full force and effect up to and including October 15, 2004, and thereafter shall become automatically renewed for successive periods of one year each, provided, however, that either party may open this Agreement for amendment in whole or in part upon notice in writing not less than sixty (60) days prior to October 15, 2004 or October 15th of any year thereafter.

**FOR THE UNION**

_Tony Parla_
_____

_Business Representative_
**Title**
_10 Dec. 2021_
**Date**

**FOR THE COMPANY**

_____

_Treasurer_
**Title**
_8/5/02_
**Date**

boiler2001.con

- 21 -

# EXHIBIT E

## Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

### First Notice of Account Receivable / (Credit)

---

BOILER & FURNACE CLEANERS CO.
4631 BALTIMORE AVE.

HYATTSVILLE          MD 20781

Re:   Accounts Receivable and Credit Listing as of May 10, 2005
      Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 1/31/05 | 4/13/05 | Health | Interest on Late Payment | $33.18 |
| 1/31/05 | 4/13/05 | Health | Computation Incorrect | ($3.18) |
| 1/31/05 | 4/13/05 | Health | 10% Liquidated Damages on Late Payment | $116.42 |
| 2/28/05 | 4/13/05 | Health | Interest on Late Payment | $41.54 |
| 2/28/05 | 4/13/05 | Health | 10% Liquidated Damages on Late Payment | $286.49 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $474.45 |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

## Teamsters Local 639 Employers Pension Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

### First Notice of Account Receivable / (Credit)

BOILER & FURNACE CLEANERS CO.
4631 BALTIMORE AVE.

HYATTSVILLE          MD  20781

Re:   Accounts Receivable and Credit Listing as of   May 10, 2005
        Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s)
listed below are incomplete or reflect discrepancies in the amounts owed.  Payments and reports were required to
be filed on or before the 15th day of the month following the month in which the work was perfomed.  The
Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and
require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid
balance.  Such interest and liquidated damages will be assessed against your account.  Please review the listing
below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business
days.  If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 1/31/05 | 4/13/05 | Pension | Interest on Late Payment | $25.22 |
| 1/31/05 | 4/13/05 | Pension | 10% Liquidated Damages on Late Payment | $88.51 |
| 2/28/05 | 4/13/05 | Pension | Interest on Late Payment | $24.06 |
| 2/28/05 | 4/13/05 | Pension | 10% Liquidated Damages on Late Payment | $165.93 |
| 3/31/05 | 5/13/05 | Pension | Interest on Late Payment | $14.63 |
| 3/31/05 | 5/13/05 | Pension | 10% Liquidated Damages on Late Payment | $104.47 |
| | | | **TOTAL FOR BOILER & FURNACE CLEANERS CO.** | **$422.82** |

Thank you for your prompt attention to this matter.  If you have any questions, please contact the Administration
Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

*Teamsters Local 639 Employers Pension Trust Fund*
*3130 Ames Place, N.E.*
*Washington, D.C. 20018*

### First Notice of Account Receivable / (Credit)

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

**BRENTWOOD**        **MD  20722**

Re:  Accounts Receivable and Credit Listing as of   June 9, 2005
     Company Number:5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was perfomed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 3/31/05 | 5/13/05 | Pension | Paid at Wrong Rate | $151.72 |
| | | | **TOTAL FOR BOILER & FURNACE CLEANERS CO.** | **$151.72** |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

*Teamsters Local 639 Employers Health Trust Fund*
*3130 Ames Place, N.E.*
*Washington, D.C. 20018*

### First Notice of Account Receivable / (Credit)

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**       **MD 20722**

Re:  Accounts Receivable and Credit Listing as of June 9, 2005
      Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 3/31/05 | 5/13/05 | Health | Paid at Wrong Rate | $65.02 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $65.02 |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

## Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

### Second Notice of Account Receivable / (Credit)

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

BRENTWOOD        MD 20722

Re:   Accounts Receivable and Credit Listing as of   June 9, 2005
      Company Number: S050

Dear Employer:

This is your second and last informal notice regarding amounts due to the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below.  These amounts relfect incomplete reports or discrepancies in the amounts owed.  Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed.  The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Such interest and liquidated damages will be assessed against your account.  Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days.  If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 1/31/05 | 4/13/05 | Health | Interest on Late Payment | $33.18 |
| 1/31/05 | 4/13/05 | Health | Computation Incorrect | ($3.18) |
| 1/31/05 | 4/13/05 | Health | 10% Liquidated Damages on Late Payment | $116.42 |
| 2/28/05 | 4/13/05 | Health | Interest on Late Payment | $41.54 |
| 2/28/05 | 4/13/05 | Health | 10% Liquidated Damages on Late Payment | $286.49 |

## Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C.  20018

### Second Notice of Account Receivable / (Credit)

| TOTAL FOR BOILER & FURNACE CLEANERS CO. | $474.45 |
|---|---|

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action.  If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

cc:    Fund Counsel

## Teamsters Local 639 Employers Pension Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

### Second Notice of Account Receivable / (Credit)

---

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**        MD  20722

Re:   Accounts Receivable and Credit Listing as of  June 9, 2005
       Company Number: 5050

Dear Employer:

This is your second and last informal notice regarding amounts due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below. These amounts reflect incomplete reports or discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 1/31/05 | 4/13/05 | Pension | Interest on Late Payment | $25.22 |
| 1/31/05 | 4/13/05 | Pension | 10% Liquidated Damages on Late Payment | $88.51 |
| 2/28/05 | 4/13/05 | Pension | Interest on Late Payment | $24.06 |
| 2/28/05 | 4/13/05 | Pension | 10% Liquidated Damages on Late Payment | $165.93 |
| 3/31/05 | 5/13/05 | Pension | Interest on Late Payment | $14.63 |
| 3/31/05 | 5/13/05 | Pension | 10% Liquidated Damages on Late Payment | $104.47 |
| | | | **TOTAL FOR BOILER & FURNACE CLEANERS CO.** | **$422.82** |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

cc:    Fund Counsel

### Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

### Second Notice of Account Receivable / (Credit)

---

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**          **MD  20722**

Re:   Accounts Receivable and Credit Listing as of   July 12, 2005
       Company Number: 5050

Dear Employer:

This is your second and last informal notice regarding amounts due to the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below.  These amounts relfect incomplete reports or discrepancies in the amounts owed.  Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed.  The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Such interest and liquidated damages will be assessed against your account.  Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days.  If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 3/31/05 | 5/13/05 | Health | Paid at Wrong Rate | $65.02 |
| | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | | $65.02 |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action.  If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

cc:    Fund Counsel

### Teamsters Local 639 Employers Pension Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

## Second Notice of Account Receivable / (Credit)

---

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**       **MD 20722**

Re:  Accounts Receivable and Credit Listing as of  July 12, 2005
     Company Number: 5050

Dear Employer:

This is your second and last informal notice regarding amounts due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below. These amounts reflect incomplete reports or discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was perfomed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 3/31/05 | 5/13/05 | Pension | Paid at Wrong Rate | $151.72 |
| | | | **TOTAL FOR BOILER & FURNACE CLEANERS CO.** | **$151.72** |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

cc:    Fund Counsel

### Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

## First Notice of Account Receivable / (Credit)

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

BRENTWOOD          MD  20722

Re:  Accounts Receivable and Credit Listing as of  August 12, 2005
     Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed.  Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed.  The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Such interest and liquidated damages will be assessed against your account.  Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days.  If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 4/30/05 | 7/13/05 | Health | 10% Liquidated Damages on Late Payment | $263.36 |
| 5/31/05 | 7/13/05 | Health | Interest on Late Payment | $77.69 |
| 5/31/05 | 7/13/05 | Health | Interest on Late Payment | $35.22 |
| 5/31/05 | 7/13/05 | Health | 10% Liquidated Damages on Late Payment | $251.57 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $627.84 |

Thank you for your prompt attention to this matter.  If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

## *Teamsters Local 639 Employers Pension Trust Fund*
### *3130 Ames Place, N.E.*
### *Washington, D.C. 20018*

### *First Notice of Account Receivable / (Credit)*

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

**BRENTWOOD**       MD 20722

Re:   Accounts Receivable and Credit Listing as of   August 12, 2005
       Company Number:5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was perfomed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 4/30/05 | 7/13/05 | Pension | Interest on Late Payment | $58.17 |
| 4/30/05 | 7/13/05 | Pension | 10% Liquidated Damages on Late Payment | $197.20 |
| 5/31/05 | 7/13/05 | Pension | Interest on Late Payment | $28.61 |
| 5/31/05 | 7/13/05 | Pension | 10% Liquidated Damages on Late Payment | $204.38 |
| | | | **TOTAL FOR BOILER & FURNACE CLEANERS CO.** | **$488.36** |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

### Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

## Second Notice of Account Receivable / (Credit)

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**      **MD 20722**

Re:   Accounts Receivable and Credit Listing as of  September 19, 2005
      Company Number:5050

Dear Employer:

This is your second and last informal notice regarding amounts due to the Teamsters Local 639 - Employers
Health Trust Fund for the month(s) listed below.  These amounts relfect incomplete reports or discrepancies in
the amounts owed.  Payments and reports were required to be filed on or before the 15th day of the month
following the month in which the work was performed.  The Agreement and Declarations of Trust permit the
imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at
the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Such interest and liquidated damages
will be assessed against your account.  Please review the listing below and make payment to the Teamsters Local
639 Employers Health Trust Fund within the next ten business days.  If the amounts below reflect a credit
balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 4/30/05 | 7/13/05 | Health | 10% Liquidated Damages on Late Payment | $263.36 |
| 5/31/05 | 7/13/05 | Health | Interest on Late Payment | $77.69 |
| 5/31/05 | 7/13/05 | Health | Interest on Late Payment | $35.22 |
| 5/31/05 | 7/13/05 | Health | 10% Liquidated Damages on Late Payment | $251.57 |

### Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

### Second Notice of Account Receivable / (Credit)

| | |
|---|---|
| TOTAL FOR BOILER & FURNACE CLEANERS CO. | $627.84 |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department


cc:    Fund Counsel

## Teamsters Local 639 Employers Health Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

### First Notice of Account Receivable / (Credit)

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

BRENTWOOD        MD  20722

Re:   Accounts Receivable and Credit Listing as of  September 19, 2005
        Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 6/30/05 | 8/16/05 | Health | Interest on Late Payment | $25.12 |
| 6/30/05 | 8/16/05 | Health | 10% Liquidated Damages on Late Payment | $228.33 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $253.45 |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

## Teamsters Local 639 Employers Pension Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

### Second Notice of Account Receivable / (Credit)

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**      MD  20722

Re:   Accounts Receivable and Credit Listing as of  September 19, 2005
        Company Number: 5050

Dear Employer:

This is your second and last informal notice regarding amounts due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below. These amounts reflect incomplete reports or discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 4/30/05 | 7/13/05 | Pension | Interest on Late Payment | $58.17 |
| 4/30/05 | 7/13/05 | Pension | 10% Liquidated Damages on Late Payment | $197.20 |
| 5/31/05 | 7/13/05 | Pension | Interest on Late Payment | $28.61 |
| 5/31/05 | 7/13/05 | Pension | 10% Liquidated Damages on Late Payment | $204.38 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $488.36 |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

cc:    Fund Counsel

*Teamsters Local 639 Employers Health Trust Fund*
*3130 Ames Place, N.E.*
*Washington, D.C. 20018*

*Second Notice of Account Receivable / (Credit)*

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**        MD  20722

Re:   Accounts Receivable and Credit Listing as of   October 7, 2005
       Company Number: 5050

Dear Employer:

This is your second and last informal notice regarding amounts due to the Teamsters Local 639 - Employers Health Trust Fund for the month(s) listed below.  These amounts relfect incomplete reports or discrepancies in the amounts owed.  Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed.  The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Such interest and liquidated damages will be assessed against your account.  Please review the listing below and make payment to the Teamsters Local 639 Employers Health Trust Fund within the next ten business days.  If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 6/30/05 | 8/16/05 | Health | Interest on Late Payment | $25.12 |
| 6/30/05 | 8/16/05 | Health | 10% Liquidated Damages on Late Payment | $228.33 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $253.45 |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action.  If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Department

cc:    Fund Counsel

## Teamsters Local 639 Employers Pension Trust Fund
### 3130 Ames Place, N.E.
### Washington, D.C. 20018

---

### Second Notice of Account Receivable / (Credit)

---

**BOILER & FURNACE CLEANERS CO.**
**4320 BLADENSBURG RD**

**BRENTWOOD**          **MD 20722**

Re:   Accounts Receivable and Credit Listing as of   October 7, 2005
         Company Number:5050

Dear Employer:

This is your second and last informal notice regarding amounts due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below. These amounts reflect incomplete reports or discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 6/30/05 | 8/8/05 | Pension | Interest on Late Payment | $29.62 |
| 6/30/05 | 8/8/05 | Pension | 10% Liquidated Damages on Late Payment | $185.13 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $214.75 |

If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

cc:    Fund Counsel

### *Teamsters Local 639 Employers Pension Trust Fund*
*3130 Ames Place, N.E.*
*Washington, D.C. 20018*

### *First Notice of Account Receivable / (Credit)*

BOILER & FURNACE CLEANERS CO.
4320 BLADENSBURG RD

BRENTWOOD          MD 20722

Re:   Accounts Receivable and Credit Listing as of   September 19, 2005
      Company Number: 5050

Dear Employer:

Your reports and/or payments due the Teamsters Local 639 - Employers Pension Trust Fund for the month(s) listed below are incomplete or reflect discrepancies in the amounts owed. Payments and reports were required to be filed on or before the 15th day of the month following the month in which the work was performed. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Such interest and liquidated damages will be assessed against your account. Please review the listing below and make payment to the Teamsters Local 639 Employers Pension Trust Fund within the next ten business days. If the amounts below reflect a credit balance, please adjust your next payment to the Fund by this amount.

| Work Month | Received Date | Fund | Description | Amount |
|---|---|---|---|---|
| 6/30/05 | 8/8/05 | Pension | Interest on Late Payment | $29.62 |
| 6/30/05 | 8/8/05 | Pension | 10% Liquidated Damages on Late Payment | $185.13 |
| | | | TOTAL FOR BOILER & FURNACE CLEANERS CO. | $214.75 |

Thank you for your prompt attention to this matter. If you have any questions, please contact the Administration Department at (202) 636-8181 to discuss this matter.

Sincerely,

Administration Depatment

# EXHIBIT F

# MOONEY, GREEN, BAKER & SAINDON, P.C.

JOHN R. MOONEY*
PAUL A. GREEN†
MARILYN L. BAKER†
ELIZABETH A. SAINDON
MARK J. MURPHY†
DOUGLAS L. PARKER*
RICHARD C. WELCH
MARC L. WILHITE
MICHAEL L. ARTZ

ROBERT H. STROPP, JR
OF COUNSEL

\* ADMITTED IN DC AND VA
† ADMITTED IN DC AND MD

SUITE 400
1920 L STREET, N.W.
WASHINGTON, DC 20036

⊕ ⟨UNION⟩ 81-S

TELEPHONE (202) 783-0010
FACSIMILE (202) 783-6088
INTERNET: www.mooneygreen.com

February 14, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners Co.
4631 Baltimore Ave.
Hyattsville, MD 20781

TRANSMITTED BY UNITED STATES MAIL

Re:    *Teamsters Local 639 Health and Pension Funds/ Unpaid Interest and Liquidated
       Damages and Past Due Balances*

Dear Mr. Hurley:

As you know, this firm represents the Teamsters Local No. 639–Employers Health Trust (the "Health Fund") and the Teamsters Local 639–Employers Pension Trust (the "Pension Fund") (collectively the "Funds"). This letter concerns the outstanding liquidated damages, interest, and past due balances that Boiler & Furnace Cleaners Co. ("Boiler & Furnace Cleaners") currently owes the Funds. As you have previously been informed by letter, telephone and email, the Funds' records indicate that Boiler & Furnace Cleaners owes the Funds the following amounts:

Health Fund

- $3,292.18 in liquidated damages for payments made late for the work months of November 2003, December 2003, January 2004, February 2004, May 2004, June 2004, November 2004, January 2005, February 2005, and March through June 2005.
- $668.89 in interest
- $65.02 balance from payment at incorrect rate in March 2005
- Total: $4,045.09

Pension Fund

- $1,714.42 in liquidated damages for payments made late for the work months of November 2003, December 2003, January 2004, February 2004, May 2004, June 2004, November 2004, January 2005, February 2005, and March through June 2005.
- $353.81 in interest

Mr. Patrick Hurley
February 14, 2006
Page 2

- $151.72 balance from payment at incorrect rate in March 2005
- Total: $2,219.95

    As a result of a 1999 settlement agreement between the Funds and Boiler & Furnace Cleaners, the Health Fund currently holds $2,762.61 in escrow to be applied to Boiler & Furnace Cleaner's debt. That settlement agreement also resulted in $1,016.86 held in escrow by the Pension Fund to be applied to the debt. After accounting for these amounts, **Boiler & Furnace Cleaners owes a total of $1,282.48 to the Health Fund and a total of $1,203.39 to the Pension Fund.**

    These amounts are outstanding and owed immediately. I respectfully request on behalf of the Funds that the amount of $1,282.48 be remitted to the Health Fund and that the amount of $1,203.39 be remitted to the Pension fund within seven days of receipt of this letter, to satisfy Boiler & Furnace Cleaner's debt.

    Please bear in mind that if Boiler & Furnace Cleaners is not willing to promptly pay its outstanding debt, the Funds are prepared to litigate, and pursuant to Section 502(g)(2) of ERISA, Boiler & Furnace Cleaners would be responsible for payment of the Funds' litigation expenses, including reasonable attorney's fees.

    If you have any questions regarding this matter, please do not hesitate to contact me. I can be reached at (202) 783-0010. Thank you for your attention.

Very truly yours,

Michael L. Artz

cc: R. Mark Winter

# EXHIBIT G

| | |
|---|---|
| **From:** | Michael Artz (martz@mooneygreen.com) |
| **To:** | phurley@hurleyco.com |
| **Date:** | 4/12/2006 3:05:57 PM |
| **Subject:** | Teamsters Local 639 Health and Pension Funds |

Mr. Hurley, per our telephone conversation this afternoon, below is a copy of the letter sent in February. The total amounts owed are $1,282.48 to the Health Fund and a total of $1,203.39 to the Pension Fund.

Please give me a call or send me an email to discuss payment of these amounts. My phone number is 202 783-0010.

Thanks,
Michael Artz


February 14, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners Co.
4631 Baltimore Ave.
Hyattsville, MD 20781

TRANSMITTED BY UNITED STATES MAIL

Re:    Teamsters Local 639 Health and Pension Funds/ Unpaid Interest and Liquidated Damages and Past Due Balances

Dear Mr. Hurley:

         As you know, this firm represents the Teamsters Local No. 639–Employers Health Trust (the " Health Fund") and the Teamsters Local 639–Employers Pension Trust (the "Pension Fund") (collectively the "Funds"). This letter concerns the outstanding liquidated damages, interest, and past due balances that Boiler & Furnace Cleaners Co. ("Boiler & Furnace Cleaners") currently owes the Funds. As you have previously been informed  by letter, telephone and email, the Funds' records indicate that Boiler & Furnace Cleaners owes the Funds the following amounts:

Health Fund

•        $3,292.18 in liquidated damages for payments made late for the work months of November 2003, December 2003, January 2004, February 2004, May 2004, June 2004, November 2004, January 2005, February 2005, and March through June 2005.
•        $668.89 in interest
•        $65.02 balance from payment at incorrect rate in March 2005
•        Total: $4,045.09

Pension Fund

•        $1,714.42 in liquidated damages for payments made late for the work months of November 2003, December 2003, January 2004, February 2004, May 2004, June 2004, November 2004, January 2005, February 2005, and March through June 2005.
•        $353.81 in interest
•        $151.72 balance from payment at incorrect rate in March 2005
•        Total: $2,219.95

         As a result of a 1999 settlement agreement between the Funds and Boiler & Furnace Cleaners, the Health Fund currently holds $2,762.61 in escrow to be applied to Boiler & Furnace Cleaner's debt.

That settlement agreement also resulted in $1,016.86 held in escrow by the Pension Fund to be applied to the debt. After accounting for these amounts, Boiler & Furnace Cleaners owes a total of $1,282.48 to the Health Fund and a total of $1,203.39 to the Pension Fund.

These amounts are outstanding and owed immediately. I respectfully request on behalf of the Funds that the amount of $1,282.48 be remitted to the Health Fund and that the amount of $1,203.39 be remitted to the Pension fund within seven days of receipt of this letter, to satisfy Boiler & Furnace Cleaner's debt.

Please bear in mind that if Boiler & Furnace Cleaners is not willing to promptly pay its outstanding debt, the Funds are prepared to litigate, and pursuant to Section 502(g)(2) of ERISA, Boiler & Furnace Cleaners would be responsible for payment of the Funds' litigation expenses, including reasonable attorney's fees.

If you have any questions regarding this matter, please do not hesitate to contact me. I can be reached at (202) 783-0010. Thank you for your attention.

Very truly yours,

/s/

Michael L. Artz

cc: R. Mark Winter

# EXHIBIT H

**From:**      Michael Artz (martz@mooneygreen.com)
**To:**        phurley@hurleyco.com
**Date:**      7/20/2006 10:03:37 AM
**Subject:**   Fwd: Teamsters Local 639 Health and Pension Funds

Mr. Hurley:

Thank you for taking my call this morning. Attached is the email I sent on April 12th outlining the debt owed. Please feel free to call me if you have any questions and I look forward to speaking to you next week.

Michael.

Michael L. Artz
Mooney, Green, Baker & Saindon, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
(202) 783-6088 (fax)
www.mooneygreen.com
martz@mooneygreen.com

**From:**    Michael Artz (martz@mooneygreen.com)
**To:**      phurley@hurleyco.com
**Date:**    8/16/2006 10:47:08 AM
**Subject:** Teamsters Local 639 Health and Pension Funds

Mr. Hurley,

Thank you for taking my call this morning. Attached is the latest letter sent from our offices to you outlining the amounts owed. As we discussed on the phone, you stated that checks would be sent our offices covering the amounts owed by Friday, August 18th. We look forward to receiving the payments and resolving this matter.

The Trustees of the Funds will be meeting the first week of September and I will report the satisfaction of the debt to them at that time. If for any reason we have not received payment by then, I will recommend that we seek legal action to recover the amounts owed.

Thank you again for your attention, and give me a call if you have any questions or need any additional information. My phone number and address are listed below.

Michael.

Michael L. Artz
Mooney, Green, Baker & Saindon, P.C.
1920 L Street NW, Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 (fax)
www.mooneygreen.com
martz@mooneygreen.com

Case 1:07-cv-00948-RBW     Document 1-9     Filed 05/22/2007     Page 4 of 4

**From:**      Michael Artz (martz@mooneygreen.com)
**To:**        phurley@hurleyco.com
**Date:**      11/6/2006 10:11:21 AM
**Subject:**   Teamsters Local Union No. 639 Health and Pension Funsd

Mr. Hurley:

The Trustees of the Teamsters Local Union No. 639 Health and Pension Funds have authorized this firm
to initiate legal action against Boiler & Furnace Cleaners Co. for failure to pay its contractual, financial
obligations to the Funds.  As we have discussed previously, Boiler & Furnace owes $4,045.09 to the
Heatlh Fund and $2,219.95 to the Pension Fund.

If we do not receive payment by Friday, November 10, 2006, we will initiate litigation efforts to recoup
these amounts.

Please call me as soon as possible to discuss this matter.  I can be reached at 202 783 0010.  Thank you.

Michael Artz

Michael L. Artz
Mooney, Green, Baker & Saindon, P.C.
1920 L Street NW, Suite 400
Washington, DC  20036
(202) 783-0010
(202) 783-6088 (fax)
www.mooneygreen.com
martz@mooneygreen.com

# EXHIBIT I

**TEAMSTERS LOCAL 639 – EMPLOYERS**

**HEALTH & PENSION TRUST FUNDS**

Teamsters Local 639 Center
3130 Ames Place, NE
Washington, DC 20018-1513
(202) 636-8181 / (800) 983-2699
Fax: (202) 526-7959

October 16, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners
4320 Bladensburg Road
Brentwood, MD 20722

Re:    Payroll Audit

Dear Mr. Hurley:

Some audit deficiencies were discovered during a recent payroll audit performed by Regardie, Brooks & Lewis. Their procedures included reading the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to the contribution reports received by the Trust Fund for the work periods January 1, 2003 to December 31, 2005. Underpayments to the Health Fund in the amount of $5,480.49 were found as a result of the Audit. Liquidated Damages will be assessed if payment is not made within 30 days of receipt of this letter.

**Please remit $5,480.49 to the Teamsters Local 639-Employers Health Trust as soon as possible.** A separate check for this deficiency will be appreciated. A copy of the final audit report is enclosed. If you have any questions, please call (202) 636-8181 or (800) 983-2699.

Sincerely,

Sue Lewandowski
Executive Assistant

/shl
Enclosure

**TEAMSTERS LOCAL 639 – EMPLOYERS**

**HEALTH & PENSION TRUST FUNDS**



Teamsters Local 639 Center
3130 Ames Place, NE
Washington, DC 20018-1513
(202) 636-8181 / (800) 983-2699
Fax: (202) 526-7959

October 16, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners
4320 Bladensburg Road
Brentwood, MD 20722

Re:   Payroll Audit

Dear Mr. Hurley:

Some audit deficiencies were discovered during a recent payroll audit performed by Regardie, Brooks & Lewis. Their procedures included reading the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to the contribution reports received by the Trust Fund for the work periods January 1, 2003 to December 31, 2005. Underpayments to the Pension Fund in the amount of $3,710.75 were found as a result of the Audit. Liquidated Damages will be assessed if payment is not made within 30 days of receipt of this letter.

**Please remit $3,710.75 to the Teamsters Local 639-Employers Pension Trust as soon as possible.** A separate check for this deficiency will be appreciated. A copy of the final audit report is enclosed. If you have any questions, please call (202) 636-8181 or (800) 983-2699.

Sincerely,

*Sue Lewandowski*

Sue Lewandowski
Executive Assistant

/shl
Enclosure

TEAMSTERS LOCAL 639 – EMPLOYERS

HEALTH & PENSION TRUST FUNDS



**Teamsters Local 639 Center**
3130 Ames Place, NE
Washington, DC 20018-1513
(202) 636-8181 / (800) 983-2699
Fax: (202) 526-7959

November 21, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners
4320 Bladensburg Road
Brentwood, MD 20722

Re:   Payroll Audit
Second and Final Informal
Notice

Dear Mr. Hurley:

We have not received your payment for some audit deficiencies that were discovered during the recent payroll audit performed by Regardie, Brooks & Lewis. Underpayments to the Health Fund in the amount of $5,480.49 were found as a result of the Audit. The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance. Liquidated Damages of $548.05 are being assessed. Interest will be assessed and billed to you once your payment is received by the Fund.

**Please remit $6,028.54 to the Teamsters Local 639-Employers Health Trust as soon as possible.** Please remit a separate check for this deficiency. If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action.

If you have any questions, please call (202) 636-8181.

Sincerely,

Sue Lewandowski
Executive Assistant

/shl



**TEAMSTERS LOCAL 639 – EMPLOYERS**

**HEALTH & PENSION TRUST FUNDS**

Teamsters Local 639 Center
3130 Ames Place, NE
Washington, DC  20018-1513
(202) 636-8181 / (800) 983-2699
Fax: (202) 526-7959

November 21, 2006

Mr. Patrick Hurley
Boiler & Furnace Cleaners
4320 Bladensburg Road
Brentwood, MD  20722

Re:  Payroll Audit
Second and Final Informal
Notice

Dear Mr. Hurley:

We have not received your payment for some audit deficiencies that were discovered during the recent payroll audit performed by Regardie, Brooks & Lewis.  Underpayments to the Pension Fund in the amount of $3,710.75 were found as a result of the Audit.  The Agreement and Declarations of Trust permit the imposition of liquidated damages in the amount of 10% and require payment of interest at the prime rate or at the rate of 1.5% per month, whichever is higher, on any unpaid balance.  Liquidated Damages of $371.08 are being assessed.  Interest will be assessed and billed to you once your payment is received by the Fund.

**Please remit $4,081.83 to the Teamsters Local 639-Employers Pension Trust as soon as possible.**  Please remit a separate check for this deficiency.  If we do not hear from you within the next ten business days, this account will be forwarded to Fund Counsel for further action.

If you have any questions, please call (202) 636-8181.

Sincerely,

Sue Lewandowski
Executive Assistant

/shl

*07-948*
*RBW*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

Teamsters Local 639-Employers Health Trust and its Trustees, and Teamsters Local 639-Employers Pension Trust and its Trustees

11001

Washington, DC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

Boiler & Furnace Cleaners, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mooney, Green, Baker & Saindon, PC
1920 L Street, NW, Suite 400
Washington, DC  20036
202-783-0010

Case: 1:07-cv-00948
Assigned To : Walton, Reggie B.
Assign. Date : 5/22/2007
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ⊙ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | □ 151 Medicare Act<br><br>**Social Security:**<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br>**Other Statutes**<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ◎ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◎ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Collections action under Section 502(a)(3), (d)(1) and (g)(2) and Section 515, of the Employee Retirement Income Security Act of 1974

**VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ Check YES only if demanded in complaint **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** | (See instruction) YES ☐ NO ☐ If yes, please complete related case form.

DATE   May 22, 2007          SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.