UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TEAMSTERS LOCAL 639-EMPLOYERS HEALTH TRUST, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-948 (RBW) |
| | ) | |
| BOILER AND FURNACE CLEANERS, INC., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiffs[1] filed this action on May 22, 2007, pursuant to the Employment Retirement

Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1001-1461 (2000), seeking

to collect delinquent and unpaid contributions, interest on the delinquent and unpaid

contributions, and liquidated damages owed to two of the plaintiffs' employee benefit plans

resulting from the defendant's violation of the parties collective bargaining agreements and

---

[1] The plaintiffs are Teamsters Local 639-Employers Health Trust ("Health Trust"), Teamsters Local 639-Employers Pension Trust ("Pension Trust"), Thomas Ratliff, John Gibson, Philip Giles, Eric D. Weiss, Ray Howard, Frank W. Stegman, and Michael R. Bull. Complaint. ¶¶ 4-7. The Health Trust is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and (3) (2000), and a multiemployer plan within the meaning of 29 U.S.C. § 1002(37)(A), established and maintained pursuant to collective bargaining agreements between the Drivers, Chauffeurs and Helpers Local Union No. 639, affiliated with the International Brotherhood of Teamsters and various employers, including, the defendant, Boiler and Furnace Cleaners, Inc. for the purpose of providing health and other welfare benefits to eligible employees and their eligible dependents covered under the collective bargaining agreements. Id. ¶ 4. The Pension Trust is an employee pension plan within the meaning of 29 U.S.C. § 1002(2) and (3), and a multiemployer plan within the meaning of 29U.S.C. 1002(37)(A), established and maintained pursuant to collective bargaining agreements between Local 639 and various employers, including the defendant, Boiler and Furnace Cleaners, Inc., for the purpose of providing pension benefits to eligible employees and their eligible dependents covered under the collective bargaining agreements. Id. ¶ 5. The Health Trust and Pension Trust are collectively referred to as employee benefit plans. Id. ¶¶ 1-5  The individuals named as plaintiffs are trustees of the Health Trust and fiduciaries within the meaning of 29 U.S.C. §§ 1002(21)(A),1132(a)(3), (e)(1) and (g)(2) (2000). Id. ¶ 7.

several trust agreements.  Complaint ("Compl") ¶ 21. They also seek any other applicable legal

and equitable relief, along with an award of reasonable attorney fees. Id.  The plaintiffs allege

that the "defendant failed to remit contributions and/or timely remit contributions owed to the

Health and Pension Trusts during a period beginning in November 2003 and ending in June

2005." Id. ¶ 21.  The plaintiffs further allege that "[a]s a result of the [d]efendant's failure to

remit contributions and/or timely remit contributions from November 2003 to June 2005, [the]

[d]efendant, as of April 26, 2007, owes to the Health and Pension Trusts $6,261.86 in interest on

late payments and liquidated damages."  Id.  ¶ 21.  The plaintiffs represent that the Pension and

Health Trusts engaged Regardie, Brooks, & Lewis to conduct a payroll audit of the defendant.

Id.  ¶ 27.  "The payroll audit revealed under payments to the Health and Pension Trusts for the

work periods of January 1, 2003 to December 31, 2005."  Id.  ¶ 28.  Thus, the plaintiff alleges

that "[a]s a result of the under payments, the [d]efendant owes the Health and Pension Trusts

$10, 110.37 in under payments[,] which includes liquidated damages of $919.13."  Id.

      Currently before this Court is the Plaintiffs' Motion for a Default Judgment.  For the

reasons set forth below, the Court finds that the plaintiffs' motion must be **GRANTED**.

## I.  BACKGROUND

      The defendant is required to make periodic contributions to the Health and Pension Trusts

pursuant to the collective bargaining agreements ("Agreements") entered into between the

defendant and  Teamsters Local Union No. 639.  Compl. ¶¶ 12-14.[2]Article XXVII of the 2001

Agreement, effective October 16, 2001, required the defendant to make contributions to the

Health Trust in the amount of $3.02 per hour "or portion thereof" for each employee that had

---

[2] Paragraph 14 is actually incorrectly numbered paragraph 1.

performed work.  Compl. ¶14 & Ex. D (Collective Bargaining Agreement By and Between

Boiler and Furnace Cleaners, Inc. and Drivers, Chauffeurs and Helpers Local Unioin #639

Affiliated with the International Brotherhood of Teamsters) ("Agreement for October 16, 2001 to

October 15, 2004"),  Article ("Art.") 27(a) & 34.  Effective October 16, 2002, the defendant was

required to make contributions in the same amount as required the previous year.  Id.   Effective

October 16, 2003, the defendant was required to make contributions to the Health Trust in the

amount of $3.17 per hour "or portion thereof" for work performed by each employee.  Id.

Pursuant to Article XXVII of a new agreement that took effect on October 16, 2004, the

defendant was required to make contributions to the Health Trust in the amount of $3.32 per hour

"or portion thereof."  Id. &  Ex. C (Collective Bargaining Agreement By and Between Boiler and

Furnace Cleaners, Inc. and Drivers, Chauffeurs and Helpers Local Unioin #639 Affiliated with

the International Brotherhood of Teamsters) ("Agreement for October 16, 2004 to October 15,

2007"),  Art. 27(a).  Effective October 16, 2005, the defendant was required to make

contributions to the Health Trust in the amount of $3.52 per hour "or portion thereof" for work

performed by each employee.  Id.  Effective October 16, 2006, the parties were to implement a

new, but yet undetermined, Health Trust contribution rate.  Id.

Pursuant to Article XXVIII of the 2001 Agreement, the defendant was required to make

contributions to the Pension Trust in the amount of $1.50 per hour "or portion thereof" for work

performed by each employee.  Compl. ¶ 15 &  Ex. D (Agreement for October 16, 2001 to

October 15, 2004), Art. 28(a).  Effective October 16, 2002, the defendant was required to make

contributions to the Pension Trust in the amount of $1.95 per hour "or portion thereof" for work

performed by each employee.  Id.  Effective October 16, 2003, the defendant was required to

make contributions to the Pension Trust in the amount of $2.41 per hour "or portion thereof" for work performed by each employee.  Id.  Pursuant to Article XXVIII of the 2004 Agreement, the defendant was required to make contributions to the Pension Trust in the amount of $3.46 per hour "or portion thereof" for work performed by each employee.  Id. & Ex. C (Agreement for October 16, 2004 to October 15, 2007), Art. 27(b).

The plaintiffs have submitted the affidavit of Helen Assefa,  Assistant Accounting Manager for the Trusts, which declares that the defendant failed to timely remit contributions owed to the Pension and Health Trusts beginning in November 2003 and ending in June 2005.  Plaintiffs' Memorandum in Support of Motion for Default Judgment ("Pls.' Mem."), Affidavit of Helen Assefa ("Assefa Aff.") ¶¶ 1,4.  As a result of the defendant's failure to timely remit these contributions, Ms. Assefa represents that the defendant owes the Health Trust $687.89 in interest for late payments, $3,292.18 in liquidated damages and $61.84 for amounts paid at the incorrect rate.[3]  Id.  ¶5. She further contends that due to the defendant's failure to timely remit these

---

[3] Pursuant to the collective bargaining agreements, the Agreements and Declarations of Trust ("Trust Agreements") require the defendant to make these payments.  Compl., Exs. C (Agreement for October 16, 2004 to October 15, 2007, Arts. 27©, 28©) and D (Agreement for October 16, 2001 to October 15, 2004), Arts. 27©, 28©.   The defendant is required to make contributions to the Trustees each month as provided for in the "Collective Bargaining Agreements or signed participation agreement."  Compl., Exs. A (Teamsters Local 639-Employers Health Trust Fund Agreement and Declaration of Trust as amended January 18, 1984) ("Health Trust Agreement "), Art. VI § 6.3 and B (Teamsters Local 639-Employers Health Trust Fund Agreement and Declaration of Trust as amended January 18, 1984) ("Pension Trust Agreement"), Art. VI § 6.3.  In accordance with Article VI of the Trust Agreements, the defendant is required to make all contributions to the Trusts "on or before the last day of the month following the month in which the [e]mployee worked . . . ."  Id. § 6.4.  If the defendant's contributions are paid late, interest is assessed at the prime rate or at 1.5% per month, whichever is greater.  Id. § 6.5.  The Health and Pension Trusts also provide that liquidated damages will be imposed on both delinquent and late contributions in the amount of 10% of the delinquency.  Id. § 6.5. Further, the Health and Pension Trusts obligate the defendant to pay the Health and Pension Trusts' the costs and expenses associated with collecting delinquent and late contributions, including accountants' fees, attorneys' fees, and court costs.  Id.

contributions, the defendant owes the Pension Trust $353.81 in interest for late payments,

$1,714.42 in liquidated damages and $151.72 for amounts paid at the incorrect rate. Id.

On or about January 31, 2005, the Pension and Health Trusts had a payroll audit of the

defendant conducted by the accounting firm of Regardie, Brooks & Lewis. Pls.' Mem., Affidavit

of Nathan Rosen ("Rosen Aff.") ¶¶ 2-5. The payroll audit revealed that there had been "under

payments and non-payments to the Funds for the work periods January 1, 2003 to December 31,

2005." Id. ¶ 6. The audit also disclosed that the defendant had "failed to report 1,592 hours to

the Health Trust and failed to report 1,199.50 hours to the Pension Trust." Id.    Further, the

payroll audit uncovered that the defendant "reported 4,367.25 hours to the Health Trust at an

incorrect contribution rate and reported 4,033 hours to the Pension Trust at the incorrect

contribution rate." Id.  Mr. Rosen concludes that "[b]ased on these unreported hours and hours

reported at the wrong rate, [the defendant] owes the Health Trust $4,825.40 for unreported hours,

[and] $655.09 for contributions made at an incorrect rate." Id.  In addition, Mr. Rosen found that

"[a]s a result of the under payments, [the defendant] owes the Pension Trust $2,299.20 for

unreported hours and $1,411.55 for contributions made at an incorrect rate." Id.

Regarding efforts to recover the defendant's delinquent contributions, the plaintiffs'

attorneys represent that the plaintiffs have incurred attorneys' fees and court costs totaling

approximately $7,275. Pls' Mem., Ex. D (Declaration of Michael L. Artz in Support of Motion

for Default Judgment) ("Artz Decl.") ¶¶ 3,8. The fees are for preparing, reviewing and revising

documents, drafting the complaint and other legal pleadings, in addition to various additional

efforts to collect the contributions. Id. ¶ 3.  Overall, the plaintiffs seek awards of $10,070.45 for

the Teamsters Local 639-Employers Health Trust and $6,301.78 for the Teamsters Local 639-

Employers Pension Trust,[4]  Pls.' Mem., Assefa Aff. ¶¶ 5, 8, in addition to the attorneys' fees and

court costs noted above.  Accordingly, the plaintiffs seek a total award of $24,262.23.

The plaintiff filed this action on May 22, 2007 and the defendant was served with the

complaint and summons on May 30, 2007 and June 6, 2007.  Pls.' Mem., Ex. A (Affidavits of

Process Servers).  Thereafter, the defendant failed to respond to the filing of this action within

twenty (20) days as required by Federal Rules of Civil Procedure 12(a)(1)(A).  The plaintiff then

filed a motion for entry of a default against the defendant and the Clerk of Court entered the

default on July 20, 2007.   The defendant has not challenged the entry of the default, or the

plaintiffs' motion for the default judgment.

## II.  STANDARD OF REVIEW

When a defendant fails to defend against a case or otherwise engages in dilatory tactics,

the plaintiff may invoke the court's power to enter a default judgment by first seeking the entry

of a default. See Fed.R.Civ.P. 55(a); Peak v. District of Columbia, 236 F.R.D. 13, 14-15 (D.D.C.

2006) (citing Keegel v. Key W. & Caribbean Trading Co., 627 F.2d 372, 375 n. 5 (D.C.Cir.

---

[4] As a result of the defendant's failure to remit contributions from November 2003 to June 2005, as of July 20, 2007, the plaintiffs contend that the defendant owes to the Health Trust $687.89 in interest for late payments, $3,292.18 in liquidated damages, and $ 61.84 for amounts paid at the incorrect rate. Pls.' Mem., Assefa Aff. ¶ 5. As a result of the defendant's failure to remit contributions for the same time period, the plaintiffs represent that the defendant owes the Pension Trust $353.81 in interest for late payments, $1,714.42 in liquidated damages, and $151.72 for amounts paid at the incorrect rate.  Id. ¶ 5. In addition, the plaintiffs allege the payroll audit revealed that the defendant reported 4,367.25 hours to the Health Trust at the incorrect rate and reported 4,033 hours to the Pension Trust at the incorrect rate for the work periods January 1, 2003 to December 31, 2005.  Id. ¶ 8. As a result of under payments and non-payments to the Health Trust and hours reported at the incorrect rate for this time period, the plaintiff alleges that the defendant owes the Health Trust $4,825.40 for unreported hours, $655.09 for contributions made at an incorrect rate and $548.05 in liquidated damages.  Id.  As a result of inadequate payments for this same time period, the plaintiffs contend that the defendant owes the Pension Trust $2,299.20 for unreported hours, $1,411.55 for contributions made at an incorrect rate and $371.08 in liquidated damages.  Id.

1980)); see also, Jackson v. Beech, 636 F.2d 831, 836 (D.C.Cir. 1980) ("The default judgment

must normally be viewed as available only when the adversary process has been halted because

of an essentially unresponsive party."). The Federal Rules of Civil Procedure provide for the

entry of a default judgment "[w]hen a party against whom a judgment for affirmative relief is

sought has failed to plead or otherwise defend as provided by these rules." Fed.R.Civ.P. 55(a).

Rule 55 sets forth a two-step process for a party seeking default judgment: entry of a default,

followed by entry of a default judgment. Fed.R.Civ.P. 55; Eitel v. McCool, 782 F.2d 1470, 1471

(9th Cir. 1986); Meehan v. Snow, 652 F.2d 274, 276 (2d Cir.1981); see also 10A Charles Alan

Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2682 (3d ed 2008) (stating that "[p]rior to

obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry

of default as provided by Rule 55(a)"). When a defendant has failed to plead or otherwise defend

against an action, the plaintiff may request that the clerk of the court enter a default against that

defendant. Fed.R.Civ.P. 55(a). Once the clerk enters the default pursuant to Rule 55(a), Rule

55(b) authorizes either the clerk or the court to enter a default judgment against a defendant. Id.

at 55(b).

Despite a plaintiff's ability to acquire a judgment by default, "[c]ases should be decided

upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472; see Peak, 236 F.R.D.

at 15 (acknowledging the inherent unfairness of awarding judgment against a party for mere

filing delays rather than deciding the case on its merits). However, while courts do not favor

default judgments and will only resolve cases in this manner "when the adversary process has

been halted because of an essentially unresponsive party[,] the diligent party must be protected

lest he be faced with interminable delay and continued uncertainty as to his rights." Peak, 236

F.R.D. at 15 (quoting Jackson, 636 F.2d at 836 (citation omitted)).

### III.  LEGAL ANALYSIS

The plaintiffs contend that they are entitled to a default judgment because "the

[d]efendant failed to defend itself in this case." Pls.' Mot. at 7.  And as the plaintiffs correctly

note, no response has been filed by the defendant, even though notice of the filing of the motion

has been provided to the defendant.

Whether entry of a default judgment is appropriate is committed to the sound discretion

of the trial court. Jackson, 636 F.2d at 836.  To warrant a default judgment, the defendant must

be considered a "totally unresponsive" party, and its default plainly willful, reflected by its failure

to respond to the summons and complaint, the entry of a default, and the motion for a default

judgment. Gutierrez v. Berg Contracting Inc., No. 99-3044, 2000 WL 331721, at *1 (D.D.C.

Mar. 20, 2000) (citing Jackson, 636 F.2d at 836). Given "the absence of any request to set aside

the default or suggestion by the defendant that it has a meritorious defense," it is clear in this case

that the standard for acquiring a default judgment has been satisfied by the plaintiff. Id.

Although a default judgment establishes a defendant's liability, the Court must "make an

independent determination of the sum to be awarded" pursuant to the judgment "unless the

amount of damages is certain." Adkins v. Teseo, 180 F.Supp.2d 15, 17 (D.D.C. 2001).Under the

ERISA, and sections 6.4 to 6.5 of the Health and Pension Trusts, the Court shall award the

plaintiff:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> © an amount equal to the greater of --

> (I) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Compl. Exs. A (Health Trust Agreement), Art. VI §§ 6.4-6.5 and B (Pension Trust Agreement) Art. VI §§ 6.4-6.5 (both providing for similar relief). In reaching the decision as to the amount a plaintiff is entitled to recover, the Court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum [to be awarded pursuant to] the default judgment." Flynn v. Mastro Masonry Contractors, 237 F.Supp.2d 66, 69 (D.D.C. 2002).

Here, the plaintiffs filed the affidavit of Helen Assefa, Assistant Accounting Manager for the Trusts, as proof of the amount they are entitled to be awarded if a default judgment is entered against the defendant. Pls.' Mem. at 3-6 & Assefa Aff. Based on this affidavit and the exhibits submitted along with the plaintiffs' memorandum in support of their motion for a default judgment, the Court finds that the plaintiffs have established their entitlement to $7,124.60 in unpaid contributions to the Pension and Health Trusts pursuant to 29 U.S.C. § 1132(g)(2)(A);$1,041.70 in interest on those unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(B); $5,925.73 for liquidated damages assessed on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii); and $2,280.20 for the contributions paid at the incorrect rate pursuant to 29 U.S.C. § 1132(g)(2)(A) and (E).

The plaintiffs have also requested attorney's fees and costs pursuant to

29 U.S.C. § 1132(g)(2)(D) and have filed the declaration of Michael L. Artz, the plaintiff's

counsel and an associate with the law firm of Mooney, Green, Baker & Saindon, P.C., in support

of these requests.  Pls.' Mem., Artz Decl. ¶¶ 1,2.   The Artz declaration states that the plaintiffs'

counsel has accrued $7,275 in legal fees, and costs of $350 for the filing fee, and $265 to effect

service of process. Accordingly, the Court finds that the plaintiffs are entitled to attorney's fees

and costs totaling $7,890.

In addition, pursuant to 29 U.S.C. § 1132(g)(2)(E), the Court may award the plaintiffs

equitable relief as appropriate and the plaintiffs request that a permanent injunction be entered

requiring the defendant to timely pay all future contributions to the Pension and Health Trusts.

Pls.' Mem. at 9.  Because the plaintiffs' requests reiterates what is already the defendant's

contractual obligations, the Court concludes that awarding such relief is appropriate.

## IV.  CONCLUSION

Based on the foregoing reasons, the plaintiffs' motion for entry of default judgment is

**GRANTED** in the amount of $24,262.23, and the defendant is ordered to pay forthwith the total

amount of the judgment awarded to the plaintiffs.  The plaintiffs' request for a permanent

injunction requiring the defendant to timely make all future contributions is also **GRANTED**.[5]


                                          /s/_____
                                            Reggie B. Walton
                                            United States District Judge

---

[5]  An Amended Order consistent with this Court's Memorandum Opinion shall be
contemporaneously entered herewith.